Rebecca A. Caley, CBN 131997
Christopher M. Domin, CBN 273951
CALEY & ASSOCIATES
A Professional Corporation
265 S. Randolph Avenue, Suite 270
Brea, California 92821-5777
rcaley@caleylaw.com
714/529-1400 Office
714/529-1515 Facsimile
2030-078

Attorneys for Defendant,
BMW Financial Services NA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUNGTAE KIM, an Individual, | CASE NO. 2:14-cv-01752-BRO SH |
| Plaintiff, | Assigned to Hon. Beverly Reid O'Connell |
| vs. | |
| BMW FINANCIAL SERVICES NA, LLC., a business entity; EQUIFAX INFORMATION SERVICES LLC, a business entity; EXPERIAN INFORMATION SOLUTIONS, INC., a Corporation; TRANSUNION, LLC., a business entity, and DOES 1-10, Inclusive, | DEFENDANT BMW FINANCIAL SERVICES NA LLC's NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE THE EXPERT REPORT, SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF THOMAS A. TARTER; DECLARATION OF REBECCA A. CALEY; DECLARATION OF ALISON PARILLO |
| Defendants. | TRIAL DATE: April 21, 2015 |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 13, 2015 at 8:30 a.m., in Courtroom 14 located at 312 N. Spring Street, Los Angeles, California 90012, Defendant BMW Financial Services NA, LLC., a Delaware limited liability company ("BMW FS" and/or "Defendant), named as BMW Financial Services NA, LLC, a business entity will and hereby does respectfully move this Court, *in limine*, to exclude the Expert

1  Report, Supplemental Expert Report and any testimony of Plaintiff's expert Thomas
2  A. Tarter on the grounds that: (1) the Expert Report and Supplemental Expert
3  Report are based on contradicted and unfounded evidence thereby making it
4  unreliable; (2) the Expert Report and Supplemental Expert Report, received only on
5  March 13, 2015, improperly offer legal opinions; and (3) Mr. Tarter lacks the
6  necessary skill, knowledge, experience and education relating to identity theft
7  investigations, specifically in the context of motor vehicle transactions.

8      BMW FS also requests that the Court issue an order directing the attorneys
9  for Plaintiff to instruct Plaintiff and his witnesses to refrain from mentioning or
10 referring to the above described evidence in the presence or hearing of jurors or
11 prospective jurors; and (3) direct the attorneys for Plaintiff to immediately inform
12 Plaintiff and their witnesses of the terms and effect of this order *in limine*.

13     This Motion is based on this Notice, Memorandum of Points and Authorities,
14 the concurrently filed Declarations of Rebecca A. Caley and Alison Parillo, the
15 Proposed Order lodged with the Court, and the exhibits attached thereto, the
16 pleadings on file in this action, and such further argument and evidence as may be
17 presented at the time of hearing on the Motion.

19 Dated: March 16, 2015

Respectfully submitted,
CALEY & ASSOCIATES
A Professional Corporation

By: _____

Rebecca A. Caley
Christopher M. Domin
Attorneys for Defendant,
BMW Financial Services NA, LLC

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

By way of this Motion in Limine No. 1 (Motion), Defendant BMW FS seeks to exclude the Expert Report, Supplemental Expert Report, and any testimony of Plaintiff's Credit Damages, Identity Theft, and Credit Reporting expert witness, Thomas A. Tarter, on the grounds that 1) the Expert Report and Supplemental Expert Report are based on contradicted and unfounded material evidence thereby making it unreliable; (2) the Expert Report and Supplemental Expert Report improperly offer legal opinions; and (3) Mr. Tarter lacks the necessary skill, knowledge, experience and education relating to identity theft investigations, specifically in the context of motor vehicle transactions, and the automobile sales industry.

## II. AN ORDER IN LIMINE IS PROPER

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered. *Luce v. United States*, 469 U.S. 38, 40 (1984). Obtaining a discretionary advance ruling on the admission of specific evidence, minimizes conferences and disruptions during trial by resolving critical evidentiary issues at the outset. *IN re: Japanese Electronic Products Antitrust Litig.* 723 F. 2d 238, 260 (3rd Cir. 1983), rev'd on other grounds, 475 U.S. 574 (1980). Authority for motions in limine is implied from "the courts' inherent power to manage the course of trials. *Luce, supra* at 41.

## III. Mr. TARTER'S EXPERT REPORT AND SUPPLEMENTAL EXPERT REPORT ARE UNRELIABLE AND HE SHOULD BE EXCLUDED FROM TESTIFYING

### A. The Standard for the Admissibility of Expert Testimony.

Expert testimony is allowed at trial if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. An expert witness must be "qualified as an expert by

knowledge, skill, experience, training, or education" and may testify "if (1) **the testimony is based upon sufficient facts or data**, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliability to the facts of the case." *Id.; see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999) [Emphasis Added.]. The "trial judge must ensure that any an all [expert] testimony or evidence admitted is not only relevant but reliable." *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). As discussed below, Mr. Tarter's Expert Report fails to meet the standards set forth above because it is based on factual findings and events that never occurred.

### B. The Automated Credit Dispute Verification (ACDV) Process.

The Expert Report reflects that Mr. Tartar was requested "to address the conduct of BMW FS relative to the Fair Credit Reporting Act" following Plaintiff's dispute of the BMW account with the Credit Reporting Agencies [Caley Decl., ¶, Exhibit "A" Expert Report.]. The only mode of transmitting information for evaluation from a Credit Reporting Agency (CRA), like Equifax, Experian or TransUnion to a furnisher of credit, like BMW FS, is by the means of an electronic transmission through the Automated Credit Dispute Verification system or what is commonly referred to as an "ACDV" report. This dispute is called an "indirect" dispute. There is also available a "direct" dispute, which is where the customer directly contacts the furnisher, or BMW FS, with any dispute information it would like the creditor or furnisher to consider. A direct dispute is not considered when a federal Fair Credit Report violation is claimed. So it is the ACDV transmission exclusively from where BMW FS receives its information to evaluate and consider any dispute. *Gorman v. Wolpoff & Adramson, LLP*, 584 F.3d 1147., 1154, fn. 9 (9th Cir. 2009); *Gustafson v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS

70046 *6 (C.D. Cal. 2014).

### C. The ACDV Did Not Include Any Additional Documents from Plaintiff.

Plaintiff made a total of **seven (7)** indirect credit disputes claiming identity theft from the CRAs. **All of them came with "no images [documents] attached."** The only information transmitted to BMW FS was the naked identity theft code number "103" with no facts or documents for BMW FS to consider or compare to the account profile. Therefore there was **zero** information for BMW FS to consider Plaintiff's identity theft dispute and claim through the ACDV system. [See Parillo Decl., ¶¶ 5-7.]

### D. The Expert Reports Rely on Inaccurate Facts.

This Motion became particularly imperative in light of Plaintiff's deposition testimony that following his receipt of the results of BMW FS' fraud investigation rejecting his claim dated October 30 2013, he did not submit any further documentation to BMW FS relating to his identity theft claim. [Caley Decl., ¶2.] In contradiction of Plaintiff's testimony, Mr. Tarter's Expert Report reflects that he relied on the following facts when forming his opinions:

- On October 30, 2013, BMW FS notified KIM of its decision regarding the denial of his claim of identity theft [Undisputed];
- **On November 27, 2013, "Kim provided additional documentation to BMW FS, and information regarding the suspected identity thief Mike Kim."**
- **On November 27, 2013, "Kim also filled out another ID Theft Affidavit with BMW FS."**

[*See* Caley Decl., ¶3, Exhibit "A" Expert Report p. 17 -Chronology (j)-(m).]

Mr. Tarter's Expert Report, and Supplemental Report are cracked at their foundation. His reports rely upon two critical events that never took place, those being that Plaintiff never provided BMW FS with any more documentation or

information to reconsider its October 30, 2013 decision to deny Plaintiff's identity theft claim, or that he filled out another ID Theft Affidavit for BMW FS' consideration. Therefore, because Mr. Tarter relied on phantom events when forming opinions, his entire Expert Report is unreliable and should not be considered by a jury. Plaintiff, however, did submit after October 30, 2013 one more indirect ACDV identity theft dispute through Experian on May 14, 2014. But like all before, it came with nothing other than the bare description claim of "identity theft" with no new images or documents for BMW FS to reconsider. So with nothing new to consider, it verified the account as otherwise accurate and again rejected the identity theft claim on June 2, 2014. [See Parillo Decl., ¶¶ 5-7.]

### E. The Expert Reports Fail to Consider the Lack of Documents and Information sent to BMW FS by the CRAs.

In addition to his reliance on phantom events, Mr. Tarter's Expert Report and tardy Supplemental Report received only on March 13, 2015, are also unreliable because they are absent any analysis of fundamental issues such as what information or documents BMW FS received from the CRAs regarding Plaintiff's claim of identity theft, and what type of investigation or reinvestigation would have been reasonable. This omission which makes his reports defective to begin with, cannot be just a mere oversight, since the CRAs forwarded **"no documents"** with each identify theft dispute claim made to BMW FS. Since BMW FS had no documents provided by the CRA's to consider, and the Fair Credit Reporting Act considers only indirect disputes, there cannot be any basis for Mr. Tartar's opinion, good, bad or indifferent. [See Parillo Decl., ¶¶ 5-7.]

An expert in this field should know that the most important question in determining reasonableness is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman v. Wolpoff, LLP*, *supra* at 1160-61. The Expert Report and Supplemental Expert Report fail to discuss what information BMW FS

received from the CRAs and instead only set forth conclusory findings such as: "[h]ere BMW FS was clearly put on notice of the identity theft situation. The ACDV forms from Experian and Equifax are unequivocal in this respect. Compared to many ACDV forms, these gave BMW FS very good information with which to perform its reinvestigation, which is mandated by the federal Fair Credit Reporting Act. BWM [sic] failed to do so.", when in fact BMW FS received "no documents".

Mr. Tarter's conclusory findings are based upon erroneous non-existent facts and also upon grossly exaggerated facts such as the above quoted languages conclusion that the ACDV forms gave BMW FS "very good" information to perform an investigation and reinvestigation.

Finally, although Mr. Tarter forms the opinion that BMW FS' investigation and reinvestigation in Plaintiff's claims of identity theft were unreasonable, he fails to identify or set forth what type of investigation would have been reasonable under these circumstances. The only discussion that nearly addresses the issue is Mr. Tarter's finding that BMW FS should have escalated the matter to more senior management or "taken steps to expand the investigation." [Caley Decl., ¶3, Exhibit "A" Expert Report, p.18.] However, without any discussion regarding what information BMW FS actually received from the CRA relating to Plaintiff's claims, Mr. Tarter's conclusions are baseless and should not be considered by the jury.

### IV. Mr. TARTER IS NOT QUALIFIED TO BE AN EXPERT IN THIS MATTER

Federal Rule of Evidence 702 requires an expert witness be "qualified" . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Determining whether an expert is qualified is part of the Court's gate keeping function under *Daubert*. Whether an expert is qualified is judged with respect to the subject matter of the witness' testimony. *See Jones v. Lincoln Elec. Co.*, 188

F.3d 709, 723 (7th Cir. 1999). BMW FS does not dispute Mr. Tarter's qualifications with regard to the general subject areas of finance and credit systems. However, it does dispute his qualifications relating to identity theft, automobile loans, and the automotive dealer industry.

Mr. Tarter has been a consultant and out of the active business world since 1993. [Caley Decl., ¶3, Exhibit "A" Expert Report, p.35.] There is nothing in the qualifications section of the Expert Report nor in his Resume reflecting his experience analyzing claims of identity theft in any loan industry - let alone the automobile finance industry. Furthermore, Mr. Tarter had already been an expert consultant for five years when Congress passed the Identity Theft and Assumption Deterrence Act ("The Identity Act") in 1998. The overview of that Act shows a sharp upward trend of identify theft complaints through the late nineteen-nineties into the beginning of the 21st Century, no doubt coinciding with the dawn of the mass public's use of the internet. Also, the California Identity Theft Law, which Plaintiff has alleged as a cause of action against BMW FS, was not even enacted until 2001 - nearly a decade after Mr. Tarter became a consultant. Cal. Civ. Code §1798.92. Therefore his first hand practical experience in this subject matter is non-existent.

Additionally, Mr. Tarter's Supplemental Expert Report should be discounted in its entirety. The Supplemental Report, which was received by BMW FS' counsel office's on the afternoon of Friday, March 13, 2015, sets forth unfounded conclusions regarding alleged automobile dealer "industry standards." There is absolutely nothing in the qualifications section of the Expert Report, Supplemental Expert Report, nor in Mr. Tarter's Resume regarding his expertise, experience and knowledge in the automobile dealer industry. Therefore, as Mr. Tarter has not adequately identified his qualifications relating to identity theft, let alone identity theft in the context of automobile loans, he should be precluded from testifying on a subject that has come to a head in the years following his exit from the banking

world.

## V. MR. TARTER'S LEGAL OPINIONS SHOULD BE EXCLUDED

While Mr. Tarter's Expert Report provides a disclaimer that he is not discussing and/or opining from a legal perspective, his opinions certainly suggest otherwise. [Caley Decl., ¶3, Exhibit "A" Expert Report p. 11, 21.] Generally, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004). Under the FCRA, the ultimate question for the jury to decide is whether BMW FS has *willfully* or *negligently* failed to comply with its furnisher investigation provisions. 15 U.S.C. §1681(n)-(o).

Here, each of Mr. Tarter's opinions, begins with the phrase "By willfully and negligently failing . . .". [Caley Decl., ¶3, Exhibit "A" Expert Report p. 21.] Therefore, Mr. Tarter is providing more than an opinion from a banking and business perspective but rather legal opinions that use the key terms set forth under the FCRA to establish liability. It is unlikely a jury will be able to distinguish and separate Mr. Tarter's opinions regarding BMW FS' alleged "negligent" and "intentional" conduct in the business setting from the willful and negligent standards set forth in the FCRA. Mr. Tarter's opinions will only lead to confusion and will prejudice BMW FS. Additionally, Mr. Tarter's untimely filed Supplemental Expert Report is riddled with legal conclusions most glaringly the following "[t]he credit reporting specialist, who are tasked with the responsibility of conducting a reasonable reinvestigation pursuant to the Fair Credit Reporting Act at BMW FS failed to conduct a reasonable reinvestigation." [Caley Decl., ¶4, Exhibit "B" Supp. Report, p. 2, para. 3.] This is precisely the type of legal

conclusion on an ultimate issue of law that Mr. Tarter is not allowed make. Therefore, any and all legal conclusions offered by Mr. Tarter in testimony, Expert Report and Supplemental Expert Report should be excluded.

## VI. CONCLUSION

Based on the foregoing reasons, BMW FS respectfully requests that this Court exclude the Expert Report, Supplemental Expert Report, and any testimony of Plaintiff's expert Thomas A. Tarter.

Dated: March 16, 2015

Respectfully submitted,
CALEY & ASSOCIATES
A Professional Corporation

By: *Rebecca A. Caley*
Rebecca A. Caley
Christopher M. Domin
Attorneys for Defendant,
BMW Financial Services NA, LLC

## DECLARATION OF REBECCA A. CALEY

I, REBECCA A. CALEY, declare as follows:

1. I am an individual over the age of 18 years, with personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify hereto. I am an attorney duly licensed and admitted to practice law before all courts of the State of California, including this court. I am an the principal of the law firm of Caley & Associates, which has been retained by Defendant BMW Financial Services, NA, LLC, a Delaware limited liability company to serve as counsel of record on its behalf in this matter. I am the primary attorney on this matter and am therefore the most qualified person to make this Declaration on behalf of this office.

2. On February 23, 2015, I attended the Deposition of Plaintiff Seungtae Kim ("Plaintiff"). At the deposition, I questioned Plaintiff regarding any actions he undertook following receipt of BMW FS' denial of his claim of identity theft dated October 30, 2013. He testified that he called BMW FS on November 7, 2013 desiring that he reconsider the denial, to which he testified that he was invited to send additional information for BMW FS to consider if he had any such information. However, in response to my question asking whether Plaintiff ever sent BMW FS any further information after receiving the notice of denial, Plaintiff responded that he did not.

3. Attached as Exhibit "A" is a true and correct copy of Mr. Tarter's Expert Report.

4. Attached as Exhibit "B" is a true and correct copy of Mr. Tarter's Supplemental Expert Report. Mr. Tarter's Supplemental Expert Report was not received by my office until the afternoon of Friday, March 13, 2015.

\\\
\\\
\\\

1  I declare under the penalty of perjury under the laws of the United States
2  of America that the foregoing is true and correct.
3  Executed on March 16, 2015, at Brea, California.

_____
REBECCA A. CALEY
Declarant

## DECLARATION OF ALISON PARILLO

I, ALISON PARILLO, declare as follows:

1. I am presently the Canada Operations Manager for BMW Financial Services NA, LLC ("BMW FS") at its office located in Hilliard, Ohio and am authorized to make this declaration on its behalf. I am over the age of eighteen (18) have knowledge of the matters set forth in this declaration and if called as a witness to testify to any of the facts set forth herein, I could and would competently do so.

2. I have been employed with BMW FS for over fifteen (15) years. From January 2013 through September 2014 I held the position of Escalations Team Leader. Among my responsibilities in that position was to be familiar with the processes and procedures of BMW FS reporting its customers' credit history to the credit reporting agencies ("CRAs") and the receipt and response of any inquiries or indirect disputes received from the CRAs through an online system called "E-Oscar" utilizing Automated Credit Dispute Verification ("ACDV") reports. I further supervised the BMW FS representatives who investigated said ACDV inquiries and disputes including any direct disputes received from the customer. Any fraud claims received from the customer are referred to the BMW fraud department for review and when the investigation is completed, the results are noted on the customer's account and then reported accordingly.

3. Based upon my personal knowledge of the sources of the information relating to the account, my own review, the methods used to maintain BMW FS's records, and my personal supervision of representatives responsible for maintaining and overseeing those records, I am able to testify that the records of BMW FS, referred to in this declaration and attached to this declaration are in fact business records of BMW FS, made in the ordinary course of BMW FS's business. In addition, all entries made in the records referred to herein are made at or near the time of the occurrences of the events of recorded therein. All

entries are made by persons who have a responsibility to and authorization from BMW.

4. I am also one of the authorized custodians of records to have custody, access and control of the customer account records of Plaintiff's account. Included within those records are the "Service Notes" where it is recorded, among other things, when, the type and any BMW FS response to any ACDV dispute that is received from the CRAs, including any direct disputes received by the customer. A true and correct copy of said Service Notes are attached hereto and incorporated herein as Exhibit "B".

5. BMW FS Exhibit "B" Service Notes reflect that on the following dates an ACDV report was received from the identified CRA and BMW FS' response thereto:

- <u>September 6, 2013</u> ACDV received from Equifax an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on September 18, 2013 that the account was verified as reported.
- <u>September 9, 2013</u> ACDV received from Experian an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on September 19, 2013 that the account was verified as reported.
- <u>September 12, 2013</u> ACDV received from Equifax an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on September 23, 2013 that the account was verified as reported.
- <u>September 9, 2013</u> ACDV received from TransUnion an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on September 23, 2013 that the account was verified as reported.

- <u>October 7, 2013</u> ACDV received from Equifax an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on October 14, 2013 that the account had been modified.
- <u>October 13, 2013</u> ACDV received from Equifax an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on October 23, 2013 that the account was verified as reported.
- <u>May 14, 2014</u> ACDV received from Experian an "Identity Theft" claim code, **but without any information, images or documents included to consider said claim.** BMW FS responded on June 2, 2014 that the account was verified as reported.

6. BMW FS also received a direct identity theft claim from the Plaintiff that was investigated by the suspicious activity representative in the Fraud Department. Documents in support of Plaintiff's claim were received on September 23, 2013 and after investigating the claim, Plaintiff was notified by mail that said claim was denied on October 30, 2013. On November 7, 2013, said Exhibit "B" Service Notes reflect that Plaintiff called in requesting reconsideration of the identity theft claim. He was invited to send any additional information for re-consideration, however, the records reflect that Plaintiff never forwarded any further documents or information to BMW FS upon which to reconsider the claim.

7. The above May 14, 2014 ACDV report received after the conclusion of the fraud investigation, like all the others stated an identity theft claim code, but again came without any information, documents or images upon which to reconsider the October 30, 2013 decision already noted in the Service Notes. Therefore, the account was verified as reported.

///

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct.
3  Executed this 16th day of March, 2015 in Hilliard, Ohio.

_____
ALISON PARILLO
Declarant