EXHIBIT "A"

11/23/2014  22:34   8182494329          BRENNAN,WIENER ASSOC          PAGE  01/40

2030-078

# The Andela Consulting Group, Inc.
### 16311 Ventura Blvd., Suite 1060
### Encino, California 91436

Thomas A. Tarter                                    Phone: (818) 380-3102
Managing Director                                   Fax: (818) 616-4357
Expert Witness — Banking                            Mail: ttarter@earthlink.net
Consulting — Financial and Management

## EXPERT REPORT

## Seungtae Kim, Plaintiff

## vs.

## BMW Financial Services NA, LLC

## United States District Court
## Central District of California

## Re: Credit Damages, Identity Theft and Credit Reporting

## Prepared By:

## Thomas A. Tarter

## November 24, 2014

11/23/2014  22:34    8182494329                    BRENNAN,WIENER ASSOC                    PAGE  02/40

# Expert Report of Thomas A. Tarter

## INTRODUCTION

I have been retained on behalf of Seungtae Kim (sometimes either "Plaintiff" or "Mr. Kim") through his counsel, Robert F. Brennan, Esq. in this civil action to provide consulting and, if required, expert testimony (direct and/or rebuttal).

As part of my engagement, I have prepared this Report (sometimes the "Report"). Consistent with my practice, this Report is subject to amendment, modification and supplementation based upon documents, facts, further analysis, information and/or testimony that may be provided to me in the future.

In the context and preparation of this Report, although I may use terms and terminology that may have a legal connotation, I am not discussing and/or opining from a legal perspective but rather solely from a business perspective. My use of any legal terms and/or terminology is based upon my direct experience as such terms, terminology and as such words are commonly used in the vernacular and in the ordinary course of business by business and credit industry professionals.

## ENGAGEMENT

I have been requested to analyze documents produced thus far in discovery relative to the actions and conduct in this case of BMW Financial Services Equifax Information Services, LLC ("Equifax") to opine (direct and/or rebuttal in written report(s), deposition, mediation and/or trial) as to credit reporting, corporate governance, and credit administration industry standards relative to Mr. Kim as a result of the actions and conduct of BMW FS.

As part of my engagement, I have been requested to address the conduct of BMW FS relative to the Fair Credit Reporting Act ("FCRA"), as well as to describe from the perspective of a business, consulting and financial industry professional with more than 40-years of experience in commercial and consumer credit, credit reporting industry customs, standards and practices, and the correction of credit reporting errors.

I have been requested to review the Documents[1] and based upon my review to formulate observations and opinions pertaining to the following:

- Describe for the Court's and Jury's consideration (i) credit administration; (ii) correction of credit reporting errors; and (iii) the credit process and applicable industry standards.

- Did BMW FS properly investigate and/or reinvestigate Mr. Kim's claims of identity theft with regard to the disputed account, consistent with industry standards?

- Were BMW FS's actions and conduct pertaining to the correction of false, negative information on Mr. Kim consistent with industry standards?

- Did BMW FS's actions and conduct (as a furnisher of credit information) conform to applicable industry standards with respect to Mr. Kim?

- Describe and discuss for the Court's and Jury's consideration false, negative credit reported disputes, as well as investigation practices and standards.

## QUALIFICATIONS

I am the Managing Director of The Andela Consulting Group, Inc. ("ACG"), a banking, business, management and corporate finance consulting firm.  I have over 40-years of experience in consumer credit, credit damages, debt collection, loan servicing including correction of erroneously reported information, mortgage lending secured by commercial

---

[1] Please see the Documents Section of this Report.

3

and residential property, credit scoring and credit score models in the business, lending and banking industries including the development of policies, procedures and practices related to commercial and consumer credit, debt collection, loan workouts and the correction of credit reporting errors.

Following the completion of my military service in 1968 which included duties as a US Army Finance and Accounting officer, I started my professional career at Lloyds Bank California, where I was a Vice President in the Corporate and California Divisions. I also have held executive level management positions at several other financial institutions, including The Sanwa Bank of California, where I was Vice President and Senior Credit Officer for Southern California; at Bank of Los Angeles, where I was one of the founding directors as well as President and Chief Executive Officer; at Center National Bank, where I was a Director, President and Chief Executive Officer; and at First Los Angeles Bank, where I was an Executive Vice President.   I have served on the boards of non-profit corporations that have included L.A. Free Net, Hope Foundation, and Los Angeles Bankruptcy Forum.

I have also been retained in excess of 1,300 matters to review documents, facts and practices to provide expert services on commercial and consumer credit, debt collection, credit damages, credit reporting, appraisals, due diligence and underwriting, compliance, disclosures, lender liability, loan workouts, dispute resolution, credit transaction securitization, mortgage lending customs, standards and practices, record retention practices and standards and other banking and credit industry issues.  In doing so, I have testified in deposition and/or trial in excess of 200 times and I have been qualified by federal, state and bankruptcy courts as an expert on commercial and consumer credit, damages, disclosures, lending industry practices, lender liability, loan origination, loan servicing and/or other banking and financial service company issues including Arizona, California, Guam, Illinois, Massachusetts, Michigan, Nevada, Oregon, Pennsylvania, Rhode Island, Saipan, Texas, Washington and West Virginia.

I have significant experience in credit, business and consulting inclusive of the matters

set forth in this Report pertaining to commercial and consumer credit, credit damages, identity theft, loan servicing, loan workouts and dispute resolution. Included in my experience was my appointment to the board of directors of First Alliance Mortgage Company ("FAMCO"). I served on FAMCO's board during its bankruptcy proceedings as an independent outside director and Chair of its Audit Committee. Prior to my board appointment, FAMCO was alleged to have engaged in predatory lending schemes and unfair and deceptive loan disclosure and lending acts and practices by various state and federal authorities including the Federal Trade Commission. FAMCO filed for bankruptcy protection and subsequently entered into settlements with various parties including the Federal Trade Commission.

I have also served as the Court approved reorganization expert for the Bank of Saipan, as the common stock trustee for Marin Outdoor; and on the Boards of Directors of American Standard Development Company ("American"), Southern California Industrial Properties ("SCIP") and MFT Development Company ("MFT"). American, SCIP and MFT were real estate development companies.

My work with the foregoing businesses, banks and financial institutions and the FDIC, as well as with ACG, has included among other things: (i) determination of appropriate interest rates, terms and conditions for commercial and consumer loans; (ii) developing and implementing credit and loan policies for servicing loans including credit reporting and debt collection: (iii) loan underwriting and due diligence; (iv) analyzed financial markets in connection with interest rates, loan underwriting, structuring and loan work outs; (v) negotiating (from both the borrower and lender perspective) and reviewing the credit underwriting of consumer and commercial loans consistent with the credit policies and the standards of various lending institutions[2]; and (v) developed and implemented loan modification, credit reporting and debt collection practices, policies and procedures.

---

[2] Including but not limited to Bank of America, Citibank, HSBC, JPMorganChase, US Bank, Union Bank, Wells Fargo Bank, PNC Bank.

During my banking and consulting career, I served as a member of the Officers Loan Committee at the banks for which I worked, except for Lloyds Bank California, where I frequently attended and participated in the loan committee meetings and as an advisor to United Mortgage. Accordingly, I have extensive experience with debt collection, credit reporting, correction of erroneously communicated negative credit information to CRAs and lending practices relating to individuals and businesses. My lending experience has included the extension of more than $1.0 billion in loans (consumer and commercial).

I meet and speak with bankers, business professionals, peers, lenders and regulators on a regular basis concerning commercial and consumer credit, debt collection, loan workouts, credit reporting, current pricing trends, interest rates, loan underwriting standards, loan servicing, securitized lending transactions and the cost of money. In this regard, I deal with many types of lenders including banks, thrifts, savings banks, commercial finance companies, life insurance companies, and private and public real estate investors. This often involves discussing with clients lender liability, credit damages, real estate secured loans, underwriting criteria, loan servicing, loan work outs, forbearance agreements, interest rates, fees, terms and conditions, risk management and credit reporting.

As a prior financial institution officer, senior executive and board of director member of three companies involved in real estate development, I have considerable experience in consumer credit related issues such as those involved in this matter. Since 1993, I have advised ACG's clients and served as a consultant (including litigation) regarding the above subject matters.

I have been a member of the panel of mediators, appointed by the United States Bankruptcy Court, Central District of California since 1995[3] and have mediated consumer credit disputes.

---

[3] At the time of its inception.

In 1965, I received a Bachelor of Science degree in business from the University of California, Los Angeles. In 1969, I received a Master of Business Administration degree, with a specialization in finance, from Santa Clara University.

I have served as a multi-term member on the board of directors of the Los Angeles Bankruptcy Forum and have regularly attended its educational meetings as well as attending meetings of other bankruptcy forums including the California Bankruptcy Forum's annual programs.

A true and correct copy of my Curriculum Vitae and an ACG Overview is attached hereto as Exhibit A and is incorporated in this Report.

## DOCUMENTS

In preparing this Report, I reviewed documents, publications and information (sometimes the "Documents") listed below:

- Complaint;
- Credit Reports;
- ACDV forms;
- Certain relevant documents produced by BMW FS;
- Plaintiff's Responses to Interrogatories from BMW FS;
- Defendant BMW FS's Responses to Interrogatories form Plaintiff;
- Plaintiff's Identity Theft Police Reports and ID Theft Affidavit;
- BMW Financial Services 9/23/2013 letter to Mr. Kim re Identity Theft;
- BMW Financial Services Victim Information Form of 9/18/2013, filled in by Plaintiff;
- BMW Financial Services letter of 10/30/2013 re credit reporting;
- Request letter from Plaintiff for investigation of BMW Financial Services account number 100119...;
- Certified Mail Receipts;
- Automated Consumer Dispute Verification EIS-KIM000139;
- Automated Consumer Dispute Verification EXP/KIM 000208;
- Fair Isaac website;
- San Francisco Federal Reserve Bank's website;
- Office of the Comptroller of the Currency's website;
- FDIC, Risk Management Manual of Examination Policies;
- Union Bank of California, Lender Liability Guidelines;
- Risk Management Association Code of Ethics;
- Debt Collectors Code of Ethics;
- Uniform Residential Mortgage Application Form – 1003;

- California Rosenthal Act;
- Fair Credit Reporting Manual, National Consumer Law Center;
- Unfair and Deceptive Acts and Practices Manual, National Consumer Law Center;
- Fair Debt Collection Manual, National Consumer Law Center;
- The Cost of Credit Manual, National Consumer Law Center;
- Principles of Corporate Finance, Richard A. Brealey and Stewart C. Myers, McGraw-Hill, 5th Edition;
- Credit Scores and Credit Reports, Evan Hendricks;
- Economic/Hedonic Damages, The Practice Book for Plaintiffs and Defense Attorneys, Michael L, Brookshire, PhD and Stan V. Smith, PhD, 6th Printing ("Economic/Hedonic Damages");
- Analyzing Financial Statements, American Institute of Banking and American Bankers Association;
- The Laws of Money, Suze Orman;
- You're Nothing But a Number, John R. Ulzheimer, Credit.com;
- Your Credit Score, Your Money & What's at Stake, How to Improve the 3-Digit That Shapes Your Financial Future, Liz Pulliam Weston, FT Press;  and,
- Footnote and textual references.

During my banking, business, financial institution and consulting career, in addition to what I have learned from my professional work experience, I have attended numerous seminars, conferences and courses. I meet with business persons, executives, bankers, lenders, listen to television programs and read professional and trade publications including the American Banker, Wall Street Journal, Business Week, The Economist, economic forecasts, Federal Reserve Bulletins and other news publications relating to business conditions, residential mortgage loan origination, loan servicing, force-placed insurance and interest rates. The subject matters covered by these materials include: banking, lending litigation, loan servicing, residential mortgage loans, and economic forecasts. While the sources for these materials may vary, they are sponsored or published by various organizations closely associated with banking, business, consumer credit, commercial lending, economics, credit, corporate finance and real estate.

11/23/2014  22:34    8182494329    BRENNAN,WIENER ASSOC    PAGE  11/40

## DISCUSSION, OBSERVATIONS, OPINIONS, AND CONCLUSIONS

*In this Report, I may use terms such as actions, breach, callous, conduct, duty, fair dealing, honesty, good faith, lender liability, obligation, reckless, theft, willfulness and other terms. In the context of this Report, I am not discussing, observing and/or opining from a legal perspective, but rather from a banking and business perspective regarding the use of such terms as they are commonly used in the ordinary course of business by banking, business and credit industry professionals.*

*Additionally, as discussed in this Report, I may use terms such as emotional, stress and other terms. In the context of this Report, I am not rendering psychological and/or medical opinions and I do not intend to quantify emotional and/or medical opinions but rather I am rendering opinions from a business and direct personal experience perspective that is based upon meetings with hundreds of individuals involved in credit disputes and credit problems on a regular basis during the past 40 + years.*

The observations, opinions and conclusions expressed in this Report are based upon my knowledge and experience developed throughout my more than 40-year career in the banking, business, board, consulting and financial institutions industry as well as information that has been produced as part of the CHASE process in this case.

### Preface

This case raises questions pertaining to consumer credit industry standards and practices in the context of broken promises, corporate governance, debt collection and credit reporting. It also raises issues about compliance with industry standards of: fairness, fair dealing, good faith, honesty, good faith, negligence, false negative reporting, and credit error investigation.

**Identity Theft**

Identity theft refers to an imposter's use of another person's personal information such as name, social security number, address and employment.  Frequently, identity theft is used to fraudulently obtain credit.  When the imposter does not pay back the fraudulently obtained credit, the easily foreseeable adverse impact of credit delinquency is reported on the identity theft victim's credit record.

Identity theft is widely publicized.  It is a systemic problem with a long history.  Hardly a week[4] goes by without me seeing or hearing about identity theft and/or  "… without startling new examples of breaches of sensitive personal data reminding us how important it is to pass a comprehensive identity-theft prevention bill in Congress quickly," said Sen. Charles E. Schumer (D- NY)[5] who also said "What bank robbery was to the Depression era, identity theft is to the Information Age. Banking regulators publish alerts, financial institution publications discuss the damaging and the negative effects on the industry and consumers, articles appear frequently in newspapers, magazines and on a television.  However, all those efforts are not sufficient to stop identity theft.  Specific action on a direct personal basis is often required to protect consumers like Mr. Kim.

The Federal Trade Commission ("FTC") has reported that Identity Theft is a huge national problem and the General Accounting Office ("GAO") also reported that, "Identity theft can cause substantial harm to the lives of individual citizens - - potentially severe emotional or other non-monetary harm, as well as economic harm.  Even though financial institutions may not hold victims liable for fraudulent debts, victims nonetheless often feel 'personally violated' and have reported spending significant amounts of time

---

[4] For example while driving to my office on Wednesday October 28, 2014, radio station (LA) 1070, as it often does, broadcast an advertisement by Charles Osgood concerning the rampant existence of ID Theft, The purpose of including this comment is to illustrate that ID Theft has been a longstanding problem and to juxtapose it to compare with the following footnote that was taken from an LA Times article almost 9 years ago.
[5] LA Times, 06/18/05, ID Theft Article.

11/23/2014  22:34   8182494329          BRENNAN,WIENER ASSOC              PAGE  13/40

trying to resolve the problems caused by identity theft - - problems such as bounced checks, loan denials, credit card application rejections, and debt collection harassment."[6]

**FCRA and Credit Reporting**

According to the National Consumer Law Center's (sometimes the "NCLC"[7]) treatise[8], "The FCRA defines a consumer report as bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. Since a report need bear on only one of these seven factors, virtually any information about a consumer satisfies this part of the definition of a consumer report. Thus reports about renter's evictions, rental payment histories, or treatment of premises relate to character, general reputation, personal characteristics...."[9]

In Section 2.3.4.1 of its manual the NCLC states, "The FCRA provides that consumer reports involve information 'used or expected to be used or collected in whole or in part for' various permissible purposes. That is, if a reporting agency expects a user to use a report for a permissible purpose or if the agency collected the information in the report for a permissible purpose. The consumer need only show that a report meets one of these criteria: that the report was 'used', 'expected to be used' or 'collected' for a permissible purpose. Thus interpretation of the scope of the term consumer report not only tracks the statutory language, but is accepted by an overwhelming majority of courts and by the Federal Trade Commission."[10]

And further, in Section 2.3.4.3 of that same manual with respect to the expected use of information, "If a consumer reporting agency provides a report with the expectation that the report will be used for one of the statute's permissible purposes, the report is a

---

[6] General Accounting Office, *Identity Theft: Available Data Indicate Growth in Prevalence & Cost* GAO-02-424T, www.gao.gov/new.items/d0242t.pdf.
[7] The NCLC headquartered in Boston, MA, the NCLC is an American non-profit corporation that publishes books and manuals pertaining to low-income consumers. Staff members frequently testify before Senate and Congress Committees on issues such as ID theft, FCRA, FDCPA, mortgage and other issues.
[8] Fair Credit Reporting Act Manual, Fourth Edition (sometimes "FCRA Manual").
[9] FCRA Manual, pg, 44.
[10] FCRA Manual, pg 46.

11/23/2014  22:34    8182494329              BRENNAN,WIENER ASSOC              PAGE  14/40

consumer report under the Act; the ultimate use to which it is put is irrelevant. It is enough if one of the anticipated uses is covered by the FCRA, even if it is not the **primary** expected use.

"While it is sufficient if the reporting agency anticipates a permitted use, this is not even necessary. The statutory language 'expected to be used' need not be limited to expectations by that particular agency in that particular transaction. It should be enough if, in the usual course of events, one would expect that one of the uses of a report would be a permissible one."[11]

Consequently, it is my opinion that it was commercially reasonable for BMW FS to be aware that any inaccurate information furnished and/or reported could damage a consumer/businessperson like Mr. Kim.

**Credit Administration**

Financial service industry credit administration functions include accounting and recording, customer service, collection, statement preparation, credit reporting and identity theft issues. Here, those functions were compromised. Not timely correcting and/or falsely reporting negative information is not good customer service. Failure to timely investigate, to correct mistakes and resolve disputes is also a violation.

As to BMW FS, the conclusion I have drawn from the Documents I have reviewed is that, because of BMW FS's failure to comply with the FCRA and Rosenthal Act, it violated industry custom, standards and practices relative to Mr. Kim. BMW FS did not act in a consumer compliant manner with respect to Mr. Kim's (i) identity theft claims, and (ii) BMW FS's actions and conduct have directly led to (a) litigation and (b) prolonged false negative credit reporting of Mr. Kim.

Here, the credit industry standards required BMW FS to be FCRA compliant[12] and to have effective policies and internal controls governing each operational area such as credit reporting, customer inquiry responses, dispute resolution, investigation and re-investigation, debt validity and customer service. Effective policies and strong internal controls enable financial service companies, like BMW FS to adhere to established and effective risk management practices that are in the public interest. The inference I have drawn from my preliminary analysis, is that BMW FS did not have in effect internal policies and procedures; or if they existed, they were not enforced. Therefore, either way, BMW FS was in violation of credit industry practices and standards as well as in violation of the FCRA and Rosenthal Acts.

**Importance of Credit and Accurate Credit Reporting**

The importance of credit is reflected in the following:

The Federal Reserve Bank of San Francisco has reported:
> "Credit is valuable. The amount of how much credit you have and how much you use it goes far beyond shopping. Whether you have good or poor credit can affect where you live and even where you work, because your credit record may be considered by prospective employers. That is why you need to understand how credit is awarded or denied and what you can do if you are treated unfairly."[13]

Important issues here are (i) follow-up through internal controls and systems to determine if corrective action took place; (ii) the thoroughness, quality and depth of investigation and re-investigation of Mr. Kim's identity theft claim by BMW FS; and (iii) the time that it took to correct his credit profile.

In his Complaint, Mr. Kim alleged that BMW FS willfully violated FCRA with respect to himself others similarly situated by deliberately having inefficient procedures for correcting their credit files, because they know that a certain number of consumers will either be intimidated or too frustrated to continuously fight back against the constant

---

[11] FCRA Manual, pg. 47.
[12] For Example: The Federal Examiner's Guide requires compliance with all laws and regulations.

onslaught of collection activities for invalid debts.  If true, those practices violate the BMW FS Code which requires Lawful and Responsible Conduct[14].

Mr. Kim also, alleged that BMW FS knew that a certain number of consumers would rather pay than fight, even if the debt is not actually owed because Defendants know that their systems intimidate consumers so they'll pay debts even if not valid or not completely valid.  The above facts were not disclosed to the Mr. Kim and are not disclosed to the borrowing public at large.  Again, if true they represent serious ethical violations and irresponsible conduct.

**Background**

**The Parties:**

Mr. Kim is a consumer as this term is defined by 15 U.S.C. Sec. 1681a(c) of the Fair Credit Reporting Act.

BMW FS is a "furnisher" as defined by 15 U.S.C. 1681s-2 of the Fair Credit Reporting Act.

**Chronology:**

I have prepared the following chronologic synopsis of events to "frame" dates and events for the consideration of readers, the Court and Jury.

    a. As of September 7, 2013, BMW FS was furnishing negative information to Mr. Kim's Experian credit profile that he was past due by $1,961 on an Auto Loan as of August 2013.  This account was not scheduled to go to a positive status until March 2020.

    b. On September 8, 2013, Equifax notified Mr. Kim by email that it had received his dispute regarding the BMW FS account, furnished by BMW FS.

    c. As of September 10, 2013, Trans Union was reporting the adverse information

---

[13] Federal Reserve Bank of San Francisco, Consumer Information, Your Credit Life How the Law Protects You.

[14] Google Search, BMW Financial Service Code of Conduct,\  "The BMW Group is fully committed to lawful and responsible conduct."

furnished by BMW FS.

d.  On September 17, 2013, Plaintiff completed an Identity Theft report with the Los Angeles Police Department.

e.  On September 18, 2013, Mr. Kim completed a BMW Financial Services Identity Theft Affidavit, wherein he indicates his discovery that Mike Kim, Mr. Kim's former boss from 06/2008 to 04/2009, was using his personal information to purchase Hyundai automobiles from Hyunda-Kia.    The affidavit was duly notarized.

f.  On September 23, 2013, BMW FS acknowledged receiving Mr. Kim's report that he was the victim of identity theft, and requested additional information.

g.  As of September 24, 2013, BMW FS was verifying to Trans Union that the adverse credit information that Mr. Kim was disputing was accurate.

h.  On October 2, 2013, BMW FS was verifying to Equifax that the negative information had been verified that the account belonged to him.

i.  As of October 4, 2013, BMW FS was furnishing to Experian the account status as "Repossession.  $1,961 past due as of Sep 2013.  This account is scheduled to continue to record until Apr 2020."

j.  On October 30, 2013, BMW FS wrote Mr. Kim, "Our internal investigation provided and notes on the account does [sic] not support your identity theft claim; therefore, BMW Financial Services will not be removing this trade line form your credit.  We trust you will understand our decision on this matter."  BMW FS does not even hint here as to what its so-called investigation consisted of.

k.  On November 22, 2013, Plaintiff filed another Identity Theft report with the Los Angeles Police Report.

l.  On November 27, 2013, Mr. Kim provided additional documentation to BMW FS, and information regarding the suspected identity thief Mike Kim.  Mr. Kim pointed out in his summary his belief that Mike Sungsoo Kim was his former employer who gathered Mr. Kim's personal information and Social Security number when Mr. Kim worked at this clinic in Denver, Colorado in 2008.    Mr. Kim further pointed out that he had only one account (#1203346092) that was opened with Kia Motor Finance in 2012.  He did not have any Auto Loans with Hyundai Motor Finance.

m.  On November 27, 2013, Mr. Kim also filled out another ID Theft Affidavit with BMW FS, again indicating that, to the best of his knowledge, former employer Mike Sungsoo Kim had gathered and used Mr. Kim's personal information (e.g., name, address, date of birth, Social Security number, etc.) to obtain "money, credit, loans, goods or services without my knowledge or authorization."

n.  As of December 5, 2013, BMW FS was still negatively furnishing account 100119... to Plaintiff's Experian credit report.

o.  Around this time Mr. Kim noticed that some of Mike Kim's information was reporting on his own Kia Finance account, including Mike Kim's 7450 Brigadoon Way, Dublin, CA address.

p.  In response to Plaintiff's interrogatory no. 19, "Did you ever investigate Mike

Kim regarding account number 1001193974?", BMW FS hedged in its answer, stating in part, "many customers use American/English nicknames instead of their given name and there was no corroboration from Plaintiff that 'Mike' was not his own nickname." This response appears somewhat ironic in view of the fact that it was BMW FS itself that alerted Mr. Kim that Mike Kim was the probable suspect who had stolen his identify. According to Mr. Kim's response, BMW FS's representative, Angela (LNU), started questioning Mr. Kim about Mike Kim. Angela specifically asked Mr. Kim who Mike Kim was, even though Mr. Kim had not brought up the name before then. (See Plaintiff's response to BMW FS interrogatory numbers 13 and 23.)

q. Every month since 2013, Mr. Kim has been receiving monthly billing statements for a vehicle he does not own, containing Mike Kim's name but Plaintiff's address. Moreover, on February 7, 2014, a representative from "Viral Recovery Services," who Plaintiff believes was attempting to collect a debt on behalf of BMW FS, asked Plaintiff if he was Mike Kim. When Plaintiff responded that he was not Mike Kim, the representative accused him of lying.

A conclusion I drew from my Document review was that Mr. Kim provided sufficient and commercially reasonable information to BMW FS in order to have the erroneous negative reporting marks removed from his credit reports. Despite the insistence of Mr. Kim, BMW FS failed to correct the errors it was furnishing, and failed to undertake sufficient investigations upon being notified of the errors.

An issue in this case is the reasonableness of the investigation performed by BMW FS following notification from the Credit Reporting Agencies. Here, BMW FS was clearly put on notice of the identity theft situation. The ACDV forms from Experian (EXP/KIM 000208) and Equifax (EIS-KIM-000139) are unequivocal in this respect. Compared to many ACDV forms, these gave BMW FS very good information with which to perform its reinvestigation, which is mandated by the federal Fair Credit Reporting Act. BWM FS failed to do so. I did not see any escalation to more senior management or steps taken to expand the investigation.

It is the standard in the banking and credit reporting industries to act fairly, in good faith, honestly and reasonably. The continued false negative furnishing by BMW FS was a violation of those standards and in my opinion were also "bad faith" conduct

18

that was foreseeable to damage and harm Mr. Kim.

Here, based upon my knowledge, experience and my review of the aforementioned Facts, BMW FS did not apply the necessary higher-level credit correction steps to fully resolve Mr. Kim's false, negative credit reporting difficulties. This is a case where "the proof is in the pudding". For BMW FS, the length of time over which the incorrect, fraudulent identity theft caused charges (including late fee assessments) and false, inaccurate credit information was reported leads me to one of two conclusions either:

- BMW FS did not have effective internal controls, systems and/or procedures to resolve identity theft credit reporting situations and or those procedures were not applied. And/or

- BMW FS did not have in place proper supervision and/or protocols to promptly correct Mr. Kim's account.

In my opinion, either situation would be a willful violation, as either one reflects an inherent attitude that credit reporting obligations are not important enough to invest the time, financial resources and energy to make sure it gets done correctly including re-investigation and verifying that corrections actual took place.

Here, BMW FS had ample notice from Mr. Kim about the problems with his BMW FS account and the false, inaccurate credit reporting.

Examples of standard of care violations in this case include:

- BMW FS falsely furnishing inaccurate credit information on Mr. Kim's credit profile;

- BMW FS not taking prompt corrective action to amend, delete and fix inaccurate credit information that erroneously and falsely reflected on the status of Mr. Kim's credit worthiness within statutory time periods:

- BMW FS failing to conduct thorough investigations and/or re-investigations of Mr. Kim's disputed credit reporting;

**FCRA and Referrals Standards:**

- The FCRA is designed to permit consumers to successfully dispute false credit information *without having to hire an attorney.*
- A system which essentially requires a consumer to *hire an attorney* to dispute and correct where someone with real authority might resolve their dispute, is knowingly unfair.
- Many consumers cannot afford to hire attorneys; many attorneys are not familiar with FCRA issues.
- A standard more in line with FCRA would be to have referrals of disputes which have not resolved within 60 to 90 days and which are not frivolous.
- A dispute is "elevated" not because a consumer hires an attorney, but rather because it remains unresolved for days or weeks past the 30-day period within which the FCRA mandates that it be resolved.

**My observations and opinions are summarized below:**

1. As to BMW FS the conclusion I have drawn, is that a thorough investigation and/or re-investigation of Mr. Kim's Account claims alleged in his Complaint did not occur.

2. An important element of credit reporting is timely correction of credit errors by furnishers. That did not occur in this case.

3. Another important element of credit reporting and credit furnishing is thoroughly investigating and re-investigating consumer claims.   It is my opinion that BMW FS violated those standards by negatively furnishing Mr. Kim's identity theft claims and

by not taking prompt corrective action to correct the false (incorrect negative) credit information.

4. Within the past several years BMW FS willfully violated the provisions of the Fair Credit Reporting Act in *at least* the following respects:

   a. By willfully and negligently failing, in the preparation of the consumer report concerning Mr. Kim, to follow commercially reasonable procedures and steps necessary to assure maximum possible accuracy of the information in the report;

   b. By willfully and negligently failing to correct, after receiving ample notice, information about the Mr. Kim which Defendant knew, or should have known, was incomplete and/or inaccurate;

   c. By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Mr. Kim's file after conducting an investigation;

   d. By willfully and negligently failing to conduct an adequate investigation of Mr. Kim's complaints, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should have been known, to the BMW FS;

   e. By willfully and negligently failing to provide subsequent users of the report with the Mr. Kim's statement of dispute or a summary thereof;

   g. By willfully and negligently failing to provide notice to Mr. Kim of the furnishing of negative credit information to credit reporting agencies,

   h. By willfully and negligently failing to place a fraud alert on Mr. Kim's credit files, as required by 15 U.S.C. Section 1681c-1;

   j. By willfully and negligently failing to provide such information to the credit bureaus indicating the full nature, reasons and extent of Mr. Kim's dispute, and thus causing the credit report to the credit bureaus to be inaccurate and incomplete.

**Conclusions:**

- Was BMW FS's investigation of Mr. Kim's identity theft dispute regarding the subject account reasonable and consistent with industry standards?   No.

- Were BMW FS's actions and conduct pertaining to "furnishing" Mr. Kim's credit information consistent with industry standards?   No.

- Did BMW FS comply with industry standards with respect to "furnishing" information consistent with credit industry standards?   No.

- Did BMW FS's actions and conduct (as furnisher of credit information) conform to applicable industry standards with respect to Mr. Kim?   No.

**Supplemental Information:**

Pursuant to Federal Rule of Civil Procedure 26:  Disclosure of expert testimony, the following is submitted:

1.  Expert Witness:
       Thomas A. Tarter
       Managing Director
       The Andela Consulting Group, Inc.
       16311 Ventura Boulevard, Suite 1060
       Sherman Oaks, CA  91436
       818-380-3102

2.  Data and information considered by the expert witness in formulating his opinions:
       Please refer to the Qualifications, Documents Reviewed and Footnotes contained in this Report.

3.  Statement of all opinions to be expressed and the basis and reasons therefore:
       Please refer to this Report. Publications – I have none in the past 10 years.

4.      Compensation:
       $275.00 per hour for litigation consulting, report preparation and travel time.
       $395.00 per hour for testimony at deposition or trial.
       No minimums.
       No contingencies.

5.  List of cases, since 2006, this expert witness has testified at trial, deposition, mediation or arbitration is as follows:

1.  Morvant vs Eastern Savvings Bank, et al, Salt Lake City, UT. Depo 11/14;

2.  Raima vs Wells Fargo Bank, et al,, Los Angeles, CA, Arb, 10/14;

3.  In re Laube, et al., Woodland Hills, CA, Trial, 10/14;

4.  Linza vs PHH Mortgage, et al, Marysville, CA, Trial 07/14;

5.  Corona, et al vs Heritage Oaks Bank, et al., Santa Barbara, CA, Depo 07/14; Trial 08/14;

6.  Capil vs Mega Life, et al., San Jose, CA, Depo 06/14;

7.  In re AJK Gadsen vs Sovereign Bank, et al, Woodland Hills, CA, Depo 05/14; Trial 06/14;

8. Carrillo vs Chase, et al, Riverside, CA, Depo 04/14;

9. UGS vs Pacific Shores, San Jose, CA, Depo, 04/14;

10. In re Fox, Santa Ana, CA, Trial 01/14;

11. Squatrito vs CSS, Chatsworth, CA, Trial 01/14;

12. In re Gonzalez, Santa Barbara, CA, Trial 12/13;

13. LWL Investments, LLC vs Universal Bank, et al., Los Angeles, CA, Depo 11/13;

14. Indymac Ventures, LLC vs Anyia, et al., Los Angeles, CA, Depo 10/13; Arb 10/13;

15. Peters vs Discover, et al., Los Angeles, CA, Depo 9/13;

16. In re Kerr, et al, San Diego, CA, Trial 06/13;

17. In re Bacino, FDIC, as Receiver for La Jolla Bank vs Birger Greg Bacino, San Diego, CA, Trial 06/13;

18. Laurelwood Group, LLC vs. East West Bank, et al., Los Angeles, CA, Depo 05/13;

19. Verdiyan vs Capital One, et al, San Francisco, CA, Depo 04/13;

20. In re: Ortega, Santa Barbara, CA, Trial, 3/13;

21. Bacarti vs JPMorgan Chase, et al, Los Angeles, CA, Depo 3/13;

22. Kim vs JPMorgan Chase, et al, Los Angeles, CA, Depo 3/13;

23. Chang and Wong vs. Hanmi Bank, et al., San Jose, CA, Depo 2/13;

24. Downs, et al vs. Wells Fargo Home Loan, et al., Reno, Nevada, NV, Depo 1/13;

25. Gaudie vs Countrywide, et al., Chicago, IL, Depo 12/12;

26. Evans – Trope, et al, Los Angeles, CA, Depo 11/12';

27. Khazra vs Shayan, Los Angeles, CA, Trial 10/12;

28. FDIC as Receiver for Union Bank, N.A. vs Prudential, et al., Phoenix, AZ, Depo 8/12;

29. FDIC as Receiver for La Jolla Bank vs O'Connor, et al., San Diego, CA, Depo 7/12;

30. The Preserve, LLC vs Point Center, et al., Santa Ana, CA, Depo 06/12;

31. Valencia Dodge vs Mikaelyan, Chatsworth, CA, Depo 04/12;

32. In re: Krishan, LLC, San Jose, CA, Trial 04/12;

33. Shoreline vs. Union Bank of California, Los Angeles, CA, Depo 04/12;

34. Utah First Federal Credit Union vs. Federal Insurance, et al., Salt Lake City, UT, Depo 02/12;

35. Lopez, et al., vs. Wells Fargo Bank, et al., Los Angeles, CA, Depo 02/12;

36. Anderson vs. Chase, et al., San Diego, CA, Depo 01/12;

37. United States vs. Sutherland, et al., Las Vegas, NV, Trial 01/12;

38. Dillon vs. Chase, et al, Charleston, WV, Depo, 12/11; Trial 02/12;

39. Triano vs. Summit Bank, et al, Oakland, CA, Depo 11/11;

40. White vs. Wells Fargo Bank, Santa Ana, CA, Depo 11/11;

41. Oxford Street Properties, LLC vs. Lance Robbins, et al, Depo 10/11;

42. Mueller vs Wells Fargo Bank, San Francisco, CA, Trial 09/11;

43. Amezcua, et al vs. East West Bank, San Jose, CA, Depo 08/11; 09/11;

44. In re: The Preserve, LLC, Los Angeles, CA, Depo 08/11; Trial 08/11 and 10/11;

45. Kim, et al vs.Kearney, CCU, et al, Las Vegas, NV, Depo 07/11;

46. Jacob vs. SDG&E, San Diego, CA, Mediation, 06/11;

47. TomatoBank vs East West Bank, Los Angeles, CA, Depo 07/11;

48. Held vs. Gilmore Bank, Santa Ana, CA, Depo ,06/11; Trial 07/11;

49. Trapasso and Justice vs Romero, et al, Stockton, CA, 05/11;

50. In re: Pacific Allied, Los Angeles, CA, Trial 03/11

51. 0Price vs Eller, et al. Riverside, CA, Trial 03/11

52. John Doe vs Church of Latter Day Saints; et al; Los Angeles, CA, Depo 02/11

53. Empire Merchandizing vs. Bank Rhode Island, Providence, Rhode Island, Depo 02/11; Trial 02/11.

54. United States of America vs. 718 West Wilson, et al, San Diego, CA, Depo 01/11

55. Dufour vs. Informative Research, et al, Garden Grove, CA, Depo 01/11

56. Amex vs Alexander Max, et al, Rockville, MD, Depo 10/10

57. Umpqua Bank vs Larmont, et al, Sacramento, CA, Depo 10/10

58. In Re: Mammoth Arrowhead 1, LLC, Phoenix, AZ, Trial 09/10

59. D. Alexander vs Anderson, et al, Los Angeles, CA, Depo 08/10

60. In re: Quarry Pond, LLC, et al, San Francisco, CA, Trial 06/1

61. Abdi vs Mulhearn, et al, Los Angeles, CA, Arb 06/10

62. Lovett vs Citibank, et al, Los Angeles, CA, Depo 05/10; Trial 10/10

63. Charon Solutions, Inc. vs Jensen, et al, Los Angeles, CA, Depo 05/10

64. Faye Estates, LLC vs Eastern Savings Bank, Los Angeles, CA, Depo 04/10

65. Zey vs Dyck-O'Neal, et al, St. Louis, MO, Depo 04/10

66. In re: Mendoza, et al, Santa Rosa, CA., Trial 04/10

67. In re: Bacchus, et al, Santa Ana, CA, Depo 02/10; Trial 02/10

68. Matthews vs Chase, et al, Jacksonville, FL, Depo 02/10

69. DeWitt vs Monterey Insurance, et al., San Diego, CA, Depo 02/10; Trial 04/10.

70. In re: Bacchus, Santa Ana, CA, Trial 03/10.

71. Matthews vs Chase, Fairbanks Capital Corporation, et al. Jacksonville, FL, Depo 02/10

72. Garcia vs Triton Acceptance, Los Angeles, CA, Depo 12/09; Trial 12/09

73. CNA, et al vs Lloyds, et al, Chicago, CA, Depo 11/09

74. Hickerson vs Financial Freedom, et al, Ventura, CA Depo 11/09; Trial 09/11;

75. Perry vs Mega Life, et al., Phoenix, AZ, Depo 11/09

76. In re: McBride's RV Storage, LLC., Riverside, CA, Depo 10/09; Trial 10/09

77. Cartwright vs CMI, WSFS, Experian, et al. Los Angeles, CA, Depo 09/09; 10/09; 12/09

78. Miller, et al vs. Norton Financial, Greer, Safe Harbor Financial, et al. San Diego, CA, Depo 09/09

79. Petty vs Petty, Jackson, CA, Trial 08/09

80. Marcus vs Vorspan, et al, Los Angeles, CA, Depo 07/09; Arb 08/09

81. Hwang vs Fang Fashion, et al, Los Angeles, CA, Depo 06/09

82. Elie vs Smith, San Mateo, CA, Depo 06/09

83. In re Waterstone, LLC, et al, Reno, NV, Trial 06/09

84. Heil Construction, Inc., vs Security Pacific Bank, et al., Bakersfield, CA, 05/09

85. UJV, et al vs Lewis, Jennings, Ross, et al. Grand Rapids, MI, Depo 02/08; Trial 04/09

86. Blackburn vs. Duckor, et al, San Diego, CA, Dep 03/09; Arb 03/09

87. Holly Young vs Bigelow, Los Angeles, CA Depo 03/09; Trial 05/09

88. Levenson vs WaMu, et al., Los Angeles, CA, Depo 01/09

89. Drury - Countrywide, et al., Tampa, FL, Depo 10/08

90. Karen Cappuccio vs Countrywide, et al, Philadelphia, PA, Trial 09/08

91. Mark Anderson vs WaMu, et al, San Diego, CA, Depo 09/08

92. Ellis vs PHEAA, KeyBank, et al, Los Angeles, CA, Depo 07/08

93. Quinn vs Cherry Lane Auto, et al, Spokane, WA, Trial 06/08

94. In re I-5 Social Services Corporation, Debtor, Fresno, CA, Depo 05/08

95. Walsh et al vs Bank of Petaluma, et al, Santa Clara, CA, Depo 04/08; Trial 09/08

96. Gorman vs HSBC, Experian, et al, New York, NY, Depo 04/08

97. Shokatz vs Better Business Financial Services, Kelly Lucas & Pacifico LLP, et al, Milwaukee, WI, Depo 03/08

98. Austin vs HSBC, et al, San Diego, CA, Depo 03/08

99. Melton vs Friend, et al, Santa Ana, CA, Depo 01/08

100.     OES vs West Coast Bank, et al, Portland OR, Trial 01/08

101.     Michigan First Credit Union vs CUMIS, et al, Detroit MI, Depo 12/07; Trial 01/09

102.     Ligon vs Chase, et al, Dallas, TX, Depo 11/07

103.     Williams vs. AutoNation, Los Angels, CA, Depo 11/07; Trial 12/07

104.     Weldon vs. Launch Marketing Concepts, Inc., Los Angeles, CA, Depo 11/07; Arbitration 12/07

105.     Arnold vs LNR, Los Angeles, CA, Depo 10/07

106.     Squirty's Collision, et al vs Finishmaster, et al, Depo 09/07; Trial 09/07

107.     Casey vs US Bank, et al, Santa Ana, CA, Depo 09/07; Trial 10/07

108.     Nardelli vs MetLife, et al, Phoenix, CA, Depo 09/07; 08/08; Trial 03/09

109.     Cha, et al vs WFB, et al, Los Angeles, CA, Depo 08/07; Trial 09/07

110.     Ho, et al vs Wells Fargo Bank, et al, Los Angeles, CA, Depo 08/07; Trial 08/08

111.     Ott vs Markley Group, et al, Los Angeles, CA, Depo 06/07

112.     Hayden vs. Hayden, Los Angeles, CA Arbitration 05/07

113.     Nelson vs. Arrow Financial Services, et al, Los Angeles, CA, Depo 04/07; Trial 05/07

114.     Foppiano vs. Union Bank of California, Sacramento, CA, Depo 04/07

115.  Board of Health Dept vs Virginia Jefferies, et al, Mansfield, OH, Depo 04/07

116.  DeLuna vs Bank America, Los Angeles, CA, Depo 12/06; Trial 06/07

117.  Pertiera vs Bank America, Los Angeles, CA, Depo 12/06

118.  United States vs. Flores, Los Angeles, CA, Trial 12/06

119.  Lehman vs Net Bank, et al, Indianapolis, In, Depo 12/06

120.  Kay vs. Washington Mutual, et al., Sacramento, CA, Depo 09/06

121.  Loudd vs. Weston, Conseco, GreenTree, et al., Los Angeles, CA, Trial 09/06

122.  Associated Bank, et al vs Brady Martz, Minneapolis, MN, Dep 0906

123.  Satey vs Chase Manhattan Bank, et al, Los Angeles, CA, Dep 08/06

124.  1124 Marylin Drive Development, LLC vs Elyaszadeh, Los Angeles, CA, Dep 04/06; Trial 07/06

125.  Paradigm Industries, Inc. vs Yang, Wells Fargo Bank, et al., Los Angeles, CA, Dep 03/06; trial 04/06

126.  Bank of America vs Mark Guzy, et al, San Francisco, CA, Dep 03/06

127.  First State Bank of Taos, et al. vs Close, Albuquerque, NM, Dep 02/06

128.  Neumann, et al. vs. Friedland, et al, San Jose, CA, Dep 02/06

129.  Babijian, et al vs Union Bank of California, Los Angeles, CA, Dep 01/06

130.  Bistro Executive, Inc., et al, vs Rewards Network, Inc., et al, Dep 01/06

131.  Lu, et al, Los Angeles, CA, Arbitration, 11/05

132.  Fisher vs Wells Fargo Home Mortgage, et al, Los Angeles, CA Dep 11/05, Trial 04/07

The aforementioned list may be supplemented in the event that a matter(s) was inadvertently omitted. Dates have been estimated to the best of my recollection.

6.  Statement of Qualifications:

Curriculum Vitae of Thomas A. Tarter attached as Exhibit A

Addendum to CV of Thomas A. Tarter
The Andela Consulting Group, Inc. Overview

11/23/2014  22:34    8182494329              BRENNAN,WIENER ASSOC              PAGE  31/40

0

**EXHIBIT A**

0

31

Andela and Tarter Background Information:


See Attached:

Andela Overview
Tarter Resume
Addendum to Tarter Resume

# The Andela Consulting Group, Inc.
### 16311 Ventura Blvd., Suite 1060
### Encino, CA 91436

## Thomas A. Tarter, Managing Direct

The Andela Consulting Group, Inc. ("Andela Consulting"), managed by Thomas A. Tarter, primarily engages in Business Reorganization Consulting, Financial Restructuring, and Expert Witness/Litigation Support. Andela Consulting has provided business reorganization, management and financial advice to financial institutions and businesses. With more than thirty five years experience as a banker and a consultant, Mr. Tarter brings to Andela Consulting extensive knowledge on how banks and related financial institutions operate. Andela Consulting has been involved in many matters which include: financial institution reorganization, banking, cash controls and management; checking accounts, credit damages, real estate lending including residential land acquisition, development and construction loans; commercial lending; corporate lending; consumer credit and credit cards; lender liability issues; letters of credit; loan commitments; bank and guaranty demands; consumer loans and shareholder and insider business and loan transactions.

Andela Consulting was formed in 1993 and since that time its associates have worked with many types of clients in a variety of areas. These include: (i) Sunshine Makers, Inc. d/b/a Simple Green to provide turnaround management and financial restructuring advice; (ii) Marin Outdoor, appointed as a director in connection with its financial restructuring and Chapter 11 proceedings; (iii) Oswell Self Storage to provide turnaround management and advisory services to a Chapter 11 debtor; (iv) A California Bank to provide litigation consultation regarding lending industry customs, standards and practices involving loan commitments; (v) Monarch Bank to provide expert testimony and litigation consultation regarding bank depository and IRA accounts; (vi) A large Nevada Real Estate Development Company to provide turnaround management and financial advice; (vii) Advanta National Bank - expert testimony and litigation consultation regarding credit card collection practices pertaining to business related credit card usage; (viii) Consumer credit - TILA, loan and lease transactions, credit damages; (ix) A Viatical Service Company to provide expert testimony and litigation consultation regarding asset-based lending industry customs, standards and practices and lender liability issues; (x) A Financial Institution to provide expert testimony and litigation consultation regarding real estate loan restructuring, construction and permanent lending; (xi) Ford Motor Credit Corporation to provide expert testimony and litigation consultation regarding lender liability, collateral protection and creditor disclosure involving an energy production project; (xii) Developed a cash management and control system for multiple inter-related Chapter 11 debtors operating in several states including Hawaii; (xiii) Developed court approved business rehabilitation and marketing plans for a troubled bank; and (xiv) Appointed to the board of directors of First Alliance Mortgage

Company, as an independent, outside director, after the company filed for bankruptcy protection.

Since 1993, Andela Consulting has provided business management and financial consulting services involving: (i) banking and financial institutions, (ii) corporate boards, (iii) commercial, consumer, real estate and corporate finance, (iv) business reorganization, and (v) turnaround management services.  The consulting and expert witness services of Andela Consulting involve the areas of: (i) Management – Interim & Turnaround; (ii) Interest Rate; (iii) Business, loan and bankruptcy plan feasibility analysis – Operational & Financial; (iv) Board of Directors – Membership & Consultation; and (v) Debt & Equity Restructuring.

11/23/2014  22:34    8182494329              BRENNAN,WIENER ASSOC                    PAGE  35/40

# THOMAS A. TARTER
## CURRICULUM VITAE
**The Andela Consulting Group, Inc.**
**16311 Ventura Blvd., Suite 1060**
Encino, CA 91436
Phone: (818) 380-3102 or (818) 414-6685
E-Mail: ttarter@earthlink.net

## EDUCATION:

University of California at Los Angeles, Bachelor of Science degree in Business, 1965.

University of Santa Clara, Master of Business Administration degree with a specialization in Finance, 1969

## LECTURER:

Mr. Tarter has been an instructor, panelist and guest lecturer for several professional organizations and institutions of higher education, including the following:

     American Institute of Banking
     American Management Association
     Los Angeles City College
     United States Small Business Administration
     Gonzaga University School of Law
     Practicing Law Institute
     International Council of Shopping Centers
     International Institute of Business and Banking
     Orange County Bankruptcy Forum
     Los Angeles Chapter of the American Society of Appraisers
     Southern California Chapter of the Appraisal Institute

## PROFESSIONAL EXPERIENCE:

September 1993 – Present
**The Andela Consulting Group, Inc.,** Managing Director
     Specializes in providing management, financial and advisory services involving corporate governance, credit damages, credit cards, management, financial and banking matters. Mr. Tarter has served on boards, assisted in corporate restructures and has provided advisory services to a diverse group of clients including corporations, law firms, banks, financial institutions and governmental agencies including the United States Small Business Administration.

Thomas A. Tarter CV

Page 2

**October 1985 – August 1993**

**First Los Angeles Bank,** Executive Vice President, Member of Officers Loan Committee

During his association with First Los Angeles Bank, Mr. Tarter was responsible for supervising the bank's largest banking region and was involved in developing compensation and incentive programs, asset/liability management, development of policies and procedures and strategic planning. Additional responsibilities included marketing, public relations, mergers, acquisitions, the development of non-traditional banking businesses such as mortgage banking division and an SBA loan department.

**November 1984 – September 1985**

**Center National Bank,** Director, President and Chief Executive Officer

Recruited to administer a troubled financial institution. Developed programs to implement regulatory requirements and to constrict the bank's assets to adhere to capital constraints. Developed and implemented policies and procedures involving credit administration and personnel including compensation, termination, staff curtailment and recruitment.

**January 1980 – October 1984**

**Bank of Los Angeles,** Organizer, Founding Director, President and Chief Executive Officer

Responsible for organization and completion of two stock offerings, initial (1982) and secondary (1984), both of which were over subscribed. Responsible for the initial and ongoing organization of the bank as well as supervising its operations and growth. Negotiated the acquisition of the American City Bank - Beverly Hills from the Federal Deposit Insurance Corporation. Developed and implemented policies and procedures including compensation, personnel, credit and audit.

**1977 – 1980**

**First Los Angeles Bank,** Regional Vice President and member of the bank's Officers Loan Committee

**1976 – 1977**

**Sanwa Bank of California,** Vice President and Senior Credit Officer for Southern California and Member of Loan Committee

Responsible for administering the bank's loan portfolio in Southern California including the implementation of policies, procedures and controls to monitor the bank's corporate, real estate and consumer loan activities.

Thomas A. Tarter CV

Page 3

1969 – 1975

**Lloyds Bank California**, Vice President, Corporate and California Divisions

Responsible for the administration and development of major corporate relationships. Developed new lending programs including acceptance and SBA financing.

Additionally, Mr. Tarter was a founding organizer of Hancock Savings Bank. He shared responsibility for its formation, organization and co-organized its initial stock offering.

## TESTIMONY:

Mr. Tarter has provided expert testimony at deposition and trial in municipal, state and federal courts as well as at arbitration.

Litigation and consultation clients include: Mobil Oil Corporation, Ford Motor Credit Corporation, Advanta National Bank, Credit First Bank, Republic Bank, Sanwa Bank, Citicorp, Deutsche Bank, JPMorgan Chase, Wells Fargo Bank, Union Bank of California, Washington Mutual, Bank of Saipan, United Mortgage, City of Oxnard, Small Business Administration, as well as individuals, municipalities, partnerships and businesses.

## BOARD MEMBERSHIPS AND BUSINESS AFFILIATIONS INCLUDED:

Western States Bankcard Association
Sunshine Makers, Inc. d/b/a Simple Green
Fort Ord Credit Union
Holiday World RV
Marin Outdoor (Bankruptcy related directorship)
First Alliance Mortgage Company (Appointed during bankruptcy proceedings)
American Standard Development Company, Inc.
BKLA Bancorp
Center Financial
Los Angeles Bankruptcy Forum
Los Angeles Business Council, member of Executive CommitteeLoyola Marymount University Fine Arts/Film School Council
Los Angeles Free Net, Inc. (Internet)

## MEDIATOR:

Mr. Tarter has been appointed by the United States Bankruptcy Court – Central District of California to its panel of mediators.

## Addendum to CV of Thomas A. Tarter

Qualifications:  My background involves experience with large and small banks.  Lloyds Bank California, Sanwa Bank of California and First Los Angeles Bank were subsidiaries of very large banks.  At Sanwa Bank and First Los Angeles Bank, I was involved in evaluating potential acquisitions that involved "healthy" and "distressed" banks. At First Los Angeles Bank, I was also involved in the purchase of loans from the F.D.I.C. and the sale of non-performing loans.

I was also involved in the formation of a savings bank and a commercial bank that were located in Los Angeles, California.  While I did not serve on the board of directors of the savings bank, I provided advice involving staffing, capital and regulatory issues to directors and senior management.  I was involved in the formation of a commercial bank - Bank of Los Angeles.  At the Bank of Los Angeles, I was involved in the acquisition of another bank that was closed by state and federal regulators, purchased loans from the FDIC and the RTC.  Issues involved in the acquisition included: deposit retention, deposit withdrawal requests, possible run on deposits, liquidity, borrower loan defaults and lender liability claims, performing and non-performing loans.  It was a complicated process that worked out positively because well-defined business and strategic plans were quickly developed and implemented.

I was also approved by regulatory agencies to serve as the chief executive officer of a financially troubled bank, Center National Bank. This assignment resulted in the identification of significant additional problems within the bank that prior to my employment had not been CHASEed by either the bank's independent auditors or by the regulators.  My duties included: Securities and Exchange Commission disclosures, valuation of the loan portfolio, amendment of financial reports, the sale of loans, shrinkage of deposits, capital infusion and implementation of new policies, procedures and controls.

Subsequent to First Alliance Mortgage Corporation ("FAMCO") filing for bankruptcy protection, I was approved and appointed with the concurrence of the board of directors, creditors and court to the board of directors of FAMCO which was a public, SEC reporting financial services company.  I served during bankruptcy proceedings as its Audit Committee, Chair. I was also appointed to serve during reorganization on the board of directors of a regional retail company.

I have served as a director of the Western States Bankcard Association and as an advisor to various financial institutions and companies involving credit card, lender liability, TILA, and UDAP issues.

I have also been appointed to the panel of mediators by the United States Bankruptcy Court for the Central District of California.

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3150 Montrose Avenue, La Crescenta, CA 91214.

On **November 24, 2014**, I served the foregoing documents described as **EXPERT REPORT OF THOMAS A. TARTER** on parties in this action,

[ X ] By US Mail to counsel representing the respective parties, as follows:

Rebecca Caley
CALEY AND ASSOCIATES
265 South Randolph Ave. Ste. 270
Brea, CA 92821

[ X  ] *I deposited such envelope in the mail at La Crescenta, California.  The envelope was mailed with postage thereon fully prepaid.

[X ] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **November 24, 2014**, at La Crescenta, California.

Bob Bichler

TO Rebecca Caley

1-714-529-1515

From: Law Offices of
        Robert F. Brennan, APC

Re: Plaintiff Seungtae Kim's
     Expert Report

39 pages