**Rebecca A. Caley, CBN 131997**
**Christopher M. Domin, CBN 273951**
**CALEY & ASSOCIATES**
**A Professional Corporation**
**265 S. Randolph Avenue, Suite 270**
**Brea, California 92821-5777**
**rcaley@caleylaw.com**
**714/529-1400 Office**
**714/529-1515 Facsimile**
**2030-078**

Attorneys for Defendant,
BMW Financial Services NA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUNGTAE KIM, an Individual, | CASE NO. 2:14-cv-01752-BRO SH |
| Plaintiff, | Assigned to Hon. Beverly Reid O'Connell |
| vs. | DEFENDANT BMW FINANCIAL SERVICES NA LLC's REPLY TO PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE NO. 1 TO EXCLUDE THE EXPERT REPORT, SUPPLEMENTAL EXPERT REPORT AND TESTIMONY OF THOMAS A. TARTER |
| BMW FINANCIAL SERVICES NA, LLC., a business entity; EQUIFAX INFORMATION SERVICES LLC, a business entity; EXPERIAN INFORMATION SOLUTIONS, INC., a Corporation; TRANSUNION, LLC., a business entity, and DOES 1-10, Inclusive, | |
| Defendants. | Date: April 6, 2015<br>Time: 1:30 p.m.<br>Dept: 14 |
| | TRIAL DATE: April 21, 2015 |

I.     **INTRODUCTION**

Expert witness Thomas A. Tarter, was retained by Plaintiff Seungtae Kim ("Plaintiff") to provide his "observations and opinions" pertaining to whether BMW FS properly investigated Plaintiff's claims of identity theft.  This is ironic because Mr. Tarter did not conduct a reasonable review and investigation of the facts of this case before offering his own legal opinions, not once, but twice. Instead, Mr. Tarter's opinions and observations are based on factual events that never occurred. His expert report is cracked at its foundation and Plaintiff's attempt at damage control in his Opposition does not change the fact that the Expert Report and its Supplement are so unreliable that both should not be presented to the trier of fact.

II.    **PLAINTIFF DID NOT DISPUTE THAT MR. TARTER'S EXPERT REPORT RELIED ON FALSIFIED FACTS AND CONCLUSORY STATEMENTS.**

As set forth in BMW FS' moving papers, an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliability to the facts of the case." FED. R. EVID. 702; *see also* Kumho Tire v. Carmichael, 526 U.S. 137, 141, 148-49 (1999).  Plaintiff's Opposition does not dispute that Mr. Tarter's Expert Report relied on completely fabricated facts as a basis to support his *legal* opinions. Instead, Plaintiff brushes aside Mr. Tarter's reliance on these ghost facts by claiming BMW FS' argument is a red herring. BMW FS' focus on this issue is not meant to mislead the court from important issues, <u>it is meant to highlight an important issue</u>. Here, Mr. Tarter's Expert Report set forth his legal opinion that BMW FS was wilful and negligent in failing to conduct a adequate investigation and reinvestigations of Mr. Kim's claims. [Ex. "A" Expert Report, p. 21.]  He

formed his opinions, however, by relying on events that never even took place. This not only calls into question Mr. Tarter's opinions regarding BMW FS' conducting of a reasonable investigation, but also all the methods he used when drafting his Expert Report and its Supplement.

Furthermore, Mr. Tarter's Expert Report reflects that the information included in the ACDV gave BMW FS "very good information" yet never discusses the specific information included. Plaintiff's Opposition fails to address why Mr. Tarter did not detail the information received by BMW FS from the ACDV, despite the fact that it is undisputed that **all the ACDV's received by BMW FS had no information or documents whatsoever, other than a character designation of the dispute as one of "Identity Theft."** Instead, Plaintiff attempts to down play the importance of the information a credit furnisher receives from a Credit Reporting Agency's ACDV, or in this case the fact that zero information or documents were received from the Plaintiff in all the ACDV's reports. Plaintiff argues that the ACDV only determines the nature of the scope of the investigation and that it is not meant to "cabin the scope of the investigation once undertaken. (citing *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1157, fn. 11 (9th Cir. 2009). Of course, a furnisher of credit is not required to only review a ACDV upon receiving an initial dispute. However, this footnote, does not minimize the *Wolpoff* Court's holding that the most important question when considering whether a furnisher's investigation or reinvestigation is reasonable are the allegations or information it receives from the Credit Reporting Agency. *Gorman, supra* at 1160. Additionally, information received by a furnisher from a CRA is even more important during a furnisher's "reinvestigation" in response to a consumer's notice of dispute.

In the situation of a reinvestigation, the Ninth Circuit has stated that "Congress could not have intended to place a burden on furnishers continually to reinvestigate a particular transactions, without any new information . . . every

1  time the consumer disputed again the transaction because the investigation was
2  not resolved in his favor." *Id*. at 1160. Here, Mr. Tarter's Expert Report and its
3  Supplement completely fabricated two facts relating to BMW FS' receipt of "new
4  information" following its initial review of Plaintiff's identity theft claim. These
5  two facts were then used by Mr. Tarter to reach his conclusion that BMW FS'
6  reinvestigation was unreasonable.  Therefore, Mr. Tarter's Expert Report and its
7  Supplement are too unreliable to present to a jury.
8       Finally, BMW FS did not just review the "ACDV" forms as Plaintiff
9  implies in his Opposition. BMW FS' Fraud investigator testified that her
10 investigation into Plaintiff's fraud claim was over two to three hours in length.
11 She spoke and emailed the automobile dealership where the vehicle was
12 purchased for purposes of comparing drivers' licenses and obtaining information
13 as to who returned the BMW vehicle, googled all phone numbers associated with
14 the account, reviewed payment history, confirmed that the vehicle was
15 voluntarily returned to the dealership, reviewed signatures, and noted different
16 addresses associated with the account.  All these facts supported a strawman
17 purchase, not identity theft. In transactions involving identifying theft, payment
18 is generally made for a period of one to three months, not two and half years
19 which occurred in this case.  Furthermore, Plaintiff claims that Mike Kim stole
20 his identified when he worked for Mr. Kim in Colorado.  However, the license
21 submitted to the automobile dealership has issue dates following the time period
22 claimed by Plaintiff.  Pursuant to Plaintiff's version of events, the dealership
23 would never have been able to receive a copy of the license in its file. Finally,
24 BMW FS has a fraud department separate from its ACDV Department for
25 efficiency purposes.  All these facts support the reasonableness of BMW FS'
26 investigation. [Caley Decl., ¶2.]
27 \\\
28 \\\

### III. NEITHER PLAINTIFF NOR HIS EXPERT HAVE SHOWN THAT MR. TATER HAS KNOWLEDGE OR EXPERIENCE WITH HANDLING MATTERS INVOLVING IDENTIFY THEFT.

Expert testimony is only admissible if "scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." FED. R. EVID. 702. The main issue in this matter is whether Plaintiff was a victim of identity theft. In fact, Plaintiff must establish that he was a victim of identity theft before he is entitled to any damages under his California Identity Theft Law cause of action. CAL. CIV. CODE § 1798.93(b)-(c). There is absolutely no mention of Mr. Tarter's experience handling identity theft disputes in the Qualifications section of his Expert Report. Furthermore, the Export Report reflects that Mr. Tarter did not review authorities or treatises on identity theft during preparation. [Ex. "A" Expert Report, pp. 3-9.]. Plaintiff's Opposition does nothing to dispute this point and instead highlights that Mr. Tarter was retained and served as an expert for Plaintiff's attorneys in the matter *Nelson v. Equifax Info. Servs.*, LLC , 522 F.Supp.2d 1222 (C.D. Cal. 2007). *Nelson*, however, did not involve a credit dispute based on identity theft. Also, the *Nelson* court allowed Mr. Tarter's report because it found that it was based on sufficient facts and data, was the product of reliable principles and methods, and Mr. Tarter applied those principles to the *facts of the case. Id.* at 1237, fn. 7 [Emphasis Added.]. Here, Mr. Tarter has not applied reliable principles to the facts of the case, but as discussed above, applied unreliable principles to facts that Plaintiff has admitted never occurred. As Mr. Tarter has not established that he is qualified to testimony on credit disputes involving identity theft, his testimony and report should be excluded.

Tarter is also not qualified to testify on automobile dealer "industry standards" as set forth in his Supplemental Report. There is absolutely nothing in the qualifications section of the Expert Report, Supplemental Expert Report, nor

in Mr. Tarter's Resume regarding his expertise, experience and knowledge in the automobile dealer industry. Furthermore this is an industry and subject completely separate from credit reporting disputes based on identity theft. The Federal Rules of Evidence require experts to supplement their reports if they discover information that renders the statement in the report incomplete or incorrect. FED. R. CIV. PROC. 26(e). "Case law interpreting the rule reflects that a supplemental disclosure must be exactly that - i.e., a supplement. A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report. *Medtronic Vascular, Inc. v. Abbot Cardiovascular Sys.,* 2008 U.S. Dist. LEXIS 112148, *6 (N.D. Cal. Oct. 15, 2008). Here, Mr. Tarter has done just that, submitted a brand new report on an issue not even addressed in his initial report.

Finally, Mr. Tarter's Supplemental Report confirms that all of his opinions and qualifications are set forth in his first export report and that his opinions from his first report have not changed. This is troubling because Mr. Tarter's first export relied of foundational facts that Plaintiff has admitted never occurred.

### IV.    MR. TARTER'S LEGAL OPINIONS SHOULD BE EXCLUDED.

BMW FS offered that all of Mr. Tarter's opinion, not just two sentences, were legal opinions. As set forth in BMW FS's moving papers, ". . . an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004). Here, Mr. Tarter's entire opinion section is comprised of opinions that BMW FS willfully and negligently failed to take certain actions associated with its investigation of Plaintiff's claim of identity. A jury will be unable to distinguish the standards of negligence and wilfulness as defined under the Fair Credit Reporting Act and California Consumer Credit Reporting Agencies Act from the terms "willfully" and

"negligently" used in each and every one of Mr. Tarter's "opinions". Furthermore, Mr. Tarter's opinions are objectionable not only because they are legal in nature, but also because they are opinions based on fabricated factual allegations.

## V.   CONCLUSION

Based on the foregoing reasons, and those offered in its moving papers, BMW FS respectfully requests that this Court exclude the Expert Report, Supplemental Expert Report, and any testimony of Plaintiff's expert Thomas A. Tarter.

Dated: March 30, 2015   Respectfully submitted,

CALEY & ASSOCIATES
A Professional Corporation


By: */s/ Rebecca. A. Caley*
    Rebecca A. Caley
    Christopher M. Domin
    Attorneys for Defendant,
    BMW Financial Services NA, LLC

## **DECLARATION OF REBECCA A. CALEY**

I, REBECCA A. CALEY, declare as follows:

1.    I am an individual over the age of 18 years, with personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify hereto. I am an attorney duly licensed and admitted to practice law before all courts of the State of California, including this court. I am an the principal of the law firm of Caley & Associates, which has been retained by Defendant BMW Financial Services, NA, LLC, a Delaware limited liability company to serve as counsel of record on its behalf in this matter. I am the primary attorney on this matter and am therefore the most qualified person to make this Declaration on behalf of this office.

2.    On February 26, 2015, I attended the Deposition of BMW FS' employee, Angela Jarosik. At the deposition, Ms. Jarosik testified that her investigation into Plaintiff's fraud claim was over two to three hours in length. She spoke and emailed the automobile dealership where the vehicle was purchased for purposes of comparing drivers' licenses and obtaining information as to who returned the BMW vehicle, googled all phone numbers associated with the account, reviewed payment history, confirmed that the vehicle was voluntarily returned to the dealership, reviewed signatures, and noted different addresses associated with the account. All these facts supported a strawman purchase, not identity theft.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 2015, at Brea, California.

_____
REBECCA A. CALEY
Declarant