Robert F. Brennan, Esq. [S.B. #132449]
**LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**
3150 Montrose Ave.
La Crescenta, CA 91214
Tel.: (818) 249-5291
Fax: (818) 249-4329
Email: rbrennan@brennanlaw.com

Stephanie R. Tatar, Esq. [S.B. #237792]
**TATAR LAW FIRM, APC**
3500 West Olive Ave., Ste. 300
Burbank, CA 91505
Tel.: (323) 744-1146
Fax: (888) 778-5695
Email: stephanie@thetatarlawfirm.com

Attorneys for Plaintiff SEUNGTAE KIM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUNGTAE KIM, an Individual,<br><br>        Plaintiff,<br><br>vs.<br><br>BMW FINANCIAL SERVICES NA, LLC., et al.,<br><br>        Defendants. | Case No. 2:14–cv–1752–BRO (JCx)<br>Hon. Beverly Reid O'Connell<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES.**<br><br>[Filed concurrently with Declarations of Robert F. Brennan, Stephanie Tatar and Seungtae Kim. Application to the Clerk to Tax Costs (CV-59) separately filed.]<br><br>Date: November 2, 2015<br>Time: 1:30 p.m.<br>Courtroom: 14 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................3

II. STATEMENT OF FACTS..................................................................4

III. ARGUMENT......................................................................................4

    A. PLAINTIFF IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO THE FCRA AND IDENTITY THEFT LAW................................................................4

    B. COUNSELS' HOURLY RATES ARE REASONABLE AND CONSISTENT WITH MARKET RATES.................................................5

    C. THE NUMBER OF HOURS COUNSEL CLAIM IS REASONABLE......8

    D. A MULTIPLIER IS WARRANTED IN THIS CASE..............................10

    E. PLAINTIFF IS ENTITLED TO RECOVER TIME SPENT IN NECESSARY TRAVEL.........................................................................14

    F. PLAINTIFF IS ENTITLED TO RECOVER ATTORNEYS' FEES FOR TIME EXPENDED ON THIS MOTION.........................................14

    G. BMWF IS NOT ENTITLED TO AN OFFSET FOR PLAINTIFF'S SETTLEMENTS WITH OTHER DEFENDANTS...................................15

IV. CONCLUSION..................................................................................16

///

///

///

i

# TABLE OF AUTHORITIES

## Cases

*Andrews v. TRW,* 7 F.Supp.2d 1056 (C.D.Cal. 1998)..................................................15

*Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir. Cal. 1986).......................14

*Davis v. Hollins Law,* 25 F.Supp.3d 1292 (E.D. Cal. 2014)..........................................6

*Dayan v. McDonald's Corp.,* No. 70CH 2258 (Ill. Cir. Ct. March 1, 1983)................9

*Gradisher v. Check Enforcement Unit, Inc.,* 2003 WL 187416
(W.D. Mich. Jan. 22, 2003)..........................................................................................9

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)............13

*In re Pine,* 705 F.2d 936 (7th Cir. Ill. 1983)...............................................................15

*Jordan v. Multnomah County,* 815 F.2d 1258 (9th Cir. Or. 1987)............................14

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975).................................11

*McGrath v. County of Nevada,* 67 F.3d 248 (9th Cir. Cal. 1995)..............................11

*McMillan v. Equifax Credit Information Services, Inc.,* 153 F.Supp.2d 129
(D.Conn. 2001).....................................................................................................15, 16

*Morales v. City of San Rafael,* 96 F.3d 359 (9th Cir. Cal. 1996)..............................10

*Nelson v. Equifax Information Services, LLC,* 522 F.Supp.2d 1222
(C.D.Cal. 2007)...........................................................................................................15

*Newhouse v. Robert's Ilima Tours, Inc.,* 708 F.2d 436 (9th Cir. 1983).....................11

*Nguyen v. HOVG, LLC,* 2015 U.S. Dist. LEXIS 124019
(S.D. Cal. Sept. 15, 2015)............................................................................................6

*Perkins v. Mobile Housing Board,* 847 F.2d 735 (11th Cir. 1988).............................8

*Ricci v. Bancshares of Maine*, 768 F.2d 456 (1st Cir. Me. 1985)..............................16

*Schwarz v. Folloder*, 767 F.2d 125 (5th Cir. Tex. 1985).........................................9

*Student Public Interest Research Group v. AT&T Bell Laboratories*,
842 F.2d 1436 (3rd Cir. 1988)..............................................................................13

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041 (9th Cir. Cal. 2000)....3, 13

*Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir. Fla. 2001).................13

*Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299 (W.D. Wash. 2001)..................13

*Welch v. Metro. Life Ins.Co.*, 480 F.3d 942 (9th Cir. Cal. 2007)..............................5

*White v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 79044
(C.D. Cal. July 15, 2011).....................................................................................13

*Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164 (7th Cir. Wis. 1997)................13

## **Statutes**

15 U.S.C. § 1681 et seq...........................................................................................4

15 U.S.C. § 1681o(a)...............................................................................................5

15 U.S.C. § 1681o(a)(3)..........................................................................................5

*Civil Code* § 1785.1 et seq.....................................................................................4

*Civil Code* § 1798.92 et seq...................................................................................4

*Civil Code* § 1798.93(c)(5)....................................................................................5

///

///

///

TO DEFENDANT BMW FINANCIAL SERVICES NA, LLC AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 2, 2015 at 1:30 p.m., or as soon thereafter as the matter can be heard, in Courtroom 14, the Honorable Beverly Reid O'Connell presiding, in the above-entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiff Seungtae Kim will and hereby does move the Court, pursuant to Local Rule 54, for an award of attorneys' fees in the amount of $542,709.23 against Defendant BMW Financial Services, NA, LLC. This amount breaks down as follows:

Brennan firm lodestar fees: $263,631.15

Brennan firm fees with 1.5 multiplier: $395,446.73

Tatar firm lodestar fees: $98,175.00

Tatar firm fees with 1.5 multiplier: $147,262.50

**Total without 1.5 multiplier: $361,806.15**

**Total with 1.5 multiplier: $542,709.23**

Plaintiff has separately filed a Bill of Costs for taxable costs. The 1.5 multiplier has been applied only to the attorneys' fees, but not to the costs.

This motion is made on the grounds that Plaintiff was the prevailing party at trial in this action for violation of the Fair Credit Reporting Act and the California Identity Theft Law, which both provide for the recovery of attorneys' fees and costs. Further, Plaintiff's recovery of attorneys' fees and costs are ordered by the Judgment entered in this case on September 9, 2015. (Dkt. # 159.) A multiplier is warranted based on the excellent result achieved and for counsel taking the risk of accepting this case which could have produced nothing in fees.

This motion is made following attempts by Plaintiff's counsel to meet and confer with Defendant's counsel pursuant to L.R. 7-3. Defendant's counsel replied to Plaintiff's counsel that she was out of state at a conference and would review the

demand for fees with her client. As of the date of this filing, Defendant has offered nothing to cover Plaintiff's attorneys' fees and costs. (Brennan Decl., ¶ 31.)

     This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Robert F. Brennan, Stephanie Tatar and Seungtae Kim, the Exhibits attached thereto, the record of this case, and any further evidence or argument the Court may wish to entertain.

Dated: Sept. 29, 2015

                        **LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**

                        By:  */s/ Robert F. Brennan*
                              Robert F. Brennan
                              Attorney for Plaintiff
                              SEUNGTAE KIM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By the present motion, Plaintiff Seungtae Kim seeks to recover the amount of his attorneys' fees incurred in this case against Defendant BMW Financial Services, NA, LLC ("Defendant" or "BMWF"). The accompanying Declarations of Plaintiff's attorneys, Robert F. Brennan and Stephanie Tatar, establish that the amount of attorneys' fees sought is based on actual time expended and that they were reasonably incurred.

Plaintiff reasonably incurred and seeks the following award of attorney's fees:

Brennan firm lodestar fees: $263,631.15

Brennan firm fees with 1.5 multiplier: $395,446.73

Tatar firm lodestar fees: $98,175.00

Tatar firm fees with 1.5 multiplier: $147,262.50

**Total without 1.5 multiplier: $361,806.15**

**Total with 1.5 multiplier: $542,709.23**

Plaintiff's costs are not included in the application for fees.[1] The attorneys' fees, but not costs and expenses, includes a multiplier of 1.5. As discussed herein, a multiplier is warranted based on risk of non-payment, exceptional results and superior representation. See *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. Cal. 2000), and other authorities discussed *infra*.

The amount of attorneys' fees sought will be subject to increase for the time required to reply to any opposition to this motion and to oppose any post-trial motions filed by Defendant. On or before the due date for the reply on the present motion, Plaintiff will submit a supplemental declaration to account for the additional

---

[1] Plaintiff has separately filed an Application to the Clerk to Tax Costs (CV-59) to recover taxable costs pursuant to L.R. 54-3.

attorneys' fees incurred in connection with the reply and for addressing other post-trial motions.

For the reasons stated herein, Plaintiff respectfully requests that the Court award Mr. Kim and his counsel the full amount of the attorneys' fees requested, as well as a multiplier of 1.5.

## II. STATEMENT OF FACTS

This action arises out of wrongful credit reporting by Defendant BMWF of a car loan taken out using Plaintiff Seungtae Kim's identity without his knowledge. Mr. Kim's Complaint stated four causes of action, three of which were at issue against BMWF at trial: First Cause of Action for violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; Second, for violation of the California Identity Theft Law, *Civil Code* § 1798.92 et seq.; and Fourth, for violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), *Civil Code* § 1785.1 et seq.

At trial Plaintiff prevailed on the FCRA and Identity Theft Law claims. Judgment was entered on September 9, 2015 for $250,000 on the FCRA claim, and $150,000 plus a civil penalty of $30,000 on the Identity Theft Law claim. The judgment included the award of Plaintiff's attorneys' fees and costs. (Dkt. # 159, Sept. 9, 2015.)

## III. ARGUMENT

### A. PLAINTIFF IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO THE FCRA AND IDENTITY THEFT LAW.

The FCRA provides that the prevailing plaintiff is entitled to recover reasonable attorney's fees and costs, stating:

> "(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title [15 USCS §§ 1681 et seq.] with

4

respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1) any actual damages sustained by the consumer as a result of the failure; and

**(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."**

15 U.S.C. § 1681o(a) (bold added). The FCRA provides similarly for willful noncompliance with the Act. 15 U.S.C. § 1681o(a)(3).

The Identity Theft Law provides for the recovery of attorneys' fees as follows:

(c) A person who proves that he or she is a victim of identity theft, . . . **shall be entitled to a judgment providing all of the following,** as appropriate:

(5) Actual damages, **attorney's fees**, and costs, and any equitable relief that the court deems appropriate. . . . .

*Civil Code* § 1798.93(c)(5) (bold added).

Since Mr. Kim was successful in this action on these two claims, he is entitled to an award of his attorneys' fees.

## B. <u>COUNSELS' HOURLY RATES ARE REASONABLE AND CONSISTENT WITH MARKET RATES.</u>

The accompanying Declarations of Robert F. Brennan and Stephanie Tatar establish that their hourly rates are reasonable and commensurate with rates charged by other attorneys in the Los Angeles community. Mr. Brennan's hourly rate of $595 and Ms. Tatar's rate of $425 are within the range of California consumer law attorneys surveyed in the "United States Consumer Law Attorney Survey Report, 2013-2014" ("Survey"). Attorney declarations regarding prevailing rates are sufficient evidence of prevailing market rates. See *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. Cal. 2007).

The majority of district courts in California will consider the Fee Survey Report as evidence of prevailing hourly rates in cases involving consumer protection

5

1 statutes. See *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1299 (E.D. Cal. 2014) (citing
2 district court cases that have relied on the report); see also *Nguyen v. HOVG, LLC*,
3 2015 U.S. Dist. LEXIS 124019, *4-5 (S.D. Cal. Sept. 15, 2015).
4     As shown in the Survey, the average hourly rate for consumer law attorneys
5 with 21-25 years of experience in Los Angeles is $725. (Brennan Decl., Exhibit 2,
6 Survey, p. 80.) Mr. Brennan has 28 years of experience. (Brennan Decl., ¶ 15.) His
7 rate of $595 is, therefore, appropriate. Ms. Tarter's rate of $425 is also appropriate
8 for her thirteen years of experience, with the average in Los Angeles being $588.
9 (Brennan Decl., Exh. 2, Survey, p. 80; Tatar Decl., ¶¶ 20 & 21.) In some AV-rated
10 firms in metropolitan areas in California, "star" partner rates are presently in the
11 range of $1,200 per hour. (Brennan Decl., ¶ 19.)
12     Mr. Brennan's rate is warranted based on his significant credentials in
13 consumer protection law and extensive trial experience. (Brennan Decl., ¶¶ 14 - 17.)
14 Mr. Brennan is a veteran of well over 50 civil jury trials, in addition to court trials,
15 court-ordered arbitrations and private arbitrations too numerous to count. He has won
16 a large majority of the trials. (Brennan Decl., ¶ 14a.) This is Mr. Brennan's eleventh
17 straight year as a "Southern California Super Lawyer." (Brennan Decl., ¶ 14b.) He
18 was one of 100 attorneys nominated for the prestigious "25 Best Lawyers In the
19 Valley" award by the San Fernando Valley Business Journal. In 2011, he was a
20 finalist for the San Fernando Valley Business Journal "Top Advisors" award, given to
21 a handful of top accountants, attorneys, insurance and banking professionals in the
22 San Fernando Valley. (Brennan Decl., ¶ 14c.) Mr. Brennan was honored as a "Top
23 Attorney" by Pasadena Magazine, for attorneys practicing in the greater Pasadena
24 area. He has received this award for six consecutive years, 2010 through 2015.
25 (Brennan Decl., ¶ 14d.) Mr. Brennan and his firm have an AV rating with Martindale-
26 Hubbell, and he received a "10 out of 10" rating on the online AVVO rating service,
27 the highest possible rating. (Brennan Decl., ¶ 14e.)
28     Mr. Brennan has been consulted as an expert witness on about nine or ten

occasions in class action, malpractice and fee dispute cases involving underlying consumer protection, warranty or fraud causes of action. (Brennan Decl., ¶ 14f.) He is the author of a number of scholarly articles in legal publications, as well as a published book "Debt Collection Answers—California Edition." He has been a contributor to many publications and a featured speaker at CLE- approved presentations on various topics for 20 years, as well as for military JAG and general legal services trainings. (Brennan Decl., ¶¶ 14g-m.) Mr. Brennan holds professional memberships in numerous attorney associations, including leadership posts in some. (Brennan Decl., ¶ 16.)

Ms. Tatar's hourly rate of $425 is reasonable and warranted. She graduated cum laude from DePaul University College of Law in 2002. (Tatar Decl., ¶ 9.) For the past thirteen years she has practiced extensively in consumer protection litigation. (Tatar Decl., ¶¶ 6 – 18.) She has personally prosecuted over twenty-five trials and arbitrations involving consumer rights litigation. Her litigation experience includes consumer warranty issues brought in state and federal courts. (Tatar Decl., ¶ 7.)

Ms. Tatar is a frequent speaker at conferences offering CLE-approved presentations. (Tatar Decl., ¶¶ 13 & 15.) She is a guest lecturer for a consumer law class at California State University, Long Beach. (Tatar Decl., ¶ 14.) She was selected as a *Super Lawyers Rising Star* for 2013, 2014 and 2015, a recognition awarded to only 2.5 percent of lawyers in the state. (Tatar Decl., ¶ 16.)

Ms. Tatar's hourly rate of $425 is reasonable based on her experience, the rates approved by courts for her in past years, and the United States Consumer Law Attorney Fee Survey. (Tatar Decl., ¶¶ 18 – 21.) Her rate is well below the average of $588 for consumer attorneys in the Los Angeles metropolitan area with eleven to fifteen years of experience. (Tatar Decl., ¶ 21 & Exhibit B, Survey, p. 80.)

## C. THE NUMBER OF HOURS COUNSEL CLAIM IS REASONABLE.

Plaintiff's counsel have submitted detailed time records. (See invoices attached to Brennan Decl., Exhibit 1, and Tatar Decl., Exhibit A.) Attorney hours sworn to are "evidence of considerable weight on the issue of the time required in the usual case" and should not be reduced unless "the time claimed is obviously and convincingly excessive under the circumstances." *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988). "[I]f the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id.*

Counsel have expended more time than they are claiming in this motion. Counsel have made a special effort to eliminate any attorney and staff time that might be duplicative of work done by others or might have been avoided by optimum economy. Counsel claim only the time stated in the billing summaries with a corresponding charge, which is less than the actual time spent. Counsel have not charged anything for facsimile transmissions, long distance telephone calls or on-line research charges. Counsel have, in short, already eliminated the "fat" from their documented hours and no further reduction is necessary or appropriate. The hours claimed by Plaintiff's counsel are "reasonable" as they stand. (Brennan Decl., ¶¶ 25 – 28; Tatar Decl., ¶¶ 2 - 25.)

Work began on this case in February of 2014, and the complaint was filed in March 2014. Discovery was then commenced. (Brennan Decl., ¶ 3.) The credit bureaus TransUnion and Equifax settled this matter in July 2014, and Experian in August 2014. Before that time, Plaintiff had issued written discovery to BMWF and to the credit bureaus, but the settlements essentially cut off discovery tasks involving the credit bureaus. Plaintiff has removed all of the "bureau-only" time entries from the bill it is presenting to the court. (Brennan Decl., ¶ 4.) Even before August of 2014, Plaintiff recognized that the "target defendant" was BMWF. After August of 2014, BMWF was the only remaining defendant. (Brennan Decl., ¶ 5.)

Following written discovery, there were a total of three depositions taken in this matter. BMWF took the deposition of Plaintiff Seungtae Kim, who was represented by Stephanie Tatar, Esq. at his deposition. Ms. Tatar then flew to Ohio to take the depositions of Angela Jarosic and Alison Parillo of BMWF. BMWF refused to produce these witnesses in California, necessitating the trip to Ohio. (Brennan Decl., ¶ 6.)

During the course of the litigation, BMWF refused to discuss settlement, except for a very nominal settlement offered at the settlement conference. Plaintiff has been reasonable in seeking to settle, but BMWF absolutely refused, necessitating a trial. (Brennan Decl., ¶ 5.) BMWF was entitled to aggressively defend this action. However, the end result of BMWF's strategy was to increase the costs and expense of this litigation. The Court should take into account such practices when determining the reasonableness of the time billed. "Defense counsel cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Gradisher v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003). In referring to aggressive litigation tactics, courts have stated: "Having wrongfully kicked the snow loose at the top, [that party] must bear the consequences of the avalanche at the bottom." *Schwarz v. Folloder*, 767 F.2d 125, 134 (5th Cir. Tex. 1985), quoting *Dayan v. McDonald's Corp.*, No. 70CH 2258 (Ill. Cir. Ct. March 1, 1983).

Trial document preparation consumed a fair amount of time, mostly due to a series of disagreements with BMWF defense counsel regarding some legal and factual contentions with which Plaintiff did not agree. For instance, defense counsel wanted Plaintiff to stipulate that Plaintiff had ordered the two Experian credit reports which he received in April of 2011, which is contrary to both Plaintiff's sworn deposition testimony as well as his trial testimony. Defense counsel submitted jury instructions directing the jury to consider the ACDV coded message from the credit bureaus as the most important factor in guiding BMWF's investigation, but this runs

1 | contrary to Ninth Circuit law as well as to the California Identity Theft law. These are
2 | but samples of some of the disagreements which Plaintiff's counsel had with defense
3 | counsel when it came time to prepare joint trial documents. (Brennan Decl., ¶ 7.)
4 |     In addition to the pre-trial conference order, Plaintiff's counsel also prepared
5 | and submitted, as joint documents, multiple versions of the exhibit list as well as two
6 | versions of the witness list. The parties did agree on a short statement of the case,
7 | after a few drafts. (Brennan Decl., ¶ 8.) For separately submitted documents, Plaintiff
8 | submitted a Memorandum of Contentions of Fact and Law, motions in limine and
9 | oppositions to defendant's motions in limine. (Brennan Decl., ¶ 9.)
10 |     The parties ultimately agreed on a joint verdict form, during trial, after
11 | exchanging several drafts. Both parties submitted jury instructions as well as
12 | objections and responses to each other's instructions. The Court ultimately drafted its
13 | own instructions, based at least in part on the submissions of the parties. (Brennan
14 | Decl., ¶¶ 10 & 11.)
15 |     Trial consumed four full days. Plaintiff was allotted five hours to put on his
16 | entire case, direct and cross examinations, and managed to call and complete all of
17 | his witnesses in that amount of time. (Brennan Decl., ¶ 12.) Plaintiff's trial testimony
18 | necessitated the use of a Korean translator, for which Plaintiff has to pay. (Brennan
19 | Decl., ¶ 13.)
20 |     Plaintiff's counsel attest that all the all the fees sought in this motion were
21 | actually, reasonably and necessarily incurred in the prosecution of this case. (Brennan
22 | Decl., ¶ 28; Tatar Decl., ¶ 5.) The reasonableness of the hourly rates for associate
23 | attorney, research attorney and paralegal billing are supported. (Brennan Decl., ¶¶ 22
24 | – 24.)

### D. A MULTIPLIER IS WARRANTED IN THIS CASE.

In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees is the "lodestar" method. *Morales v. City of San Rafael*, 96

F.3d 359, 363 (9th Cir. Cal. 1996). The lodestar method multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. Cal. 1995).

After making that computation, courts then assess whether it is necessary to enhance the lodestar figure on the basis of twelve factors:

> "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results [21] obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

*McGrath*, *supra*, at 252 n.4, citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The court need not discuss specifically each factor so long as the record shows that the court considered the factors called into question by the case at hand. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).

These twelve factors are discussed in the accompanying Brennan Declaration as follows:

"(1) the time and labor required." As can be seen from the Brennan and Tatar invoices included with their accompanying Declarations, both Mr. Brennan's firm and Ms. Tatar devoted substantial time to the prosecution of this matter.

"(2) the novelty and difficulty of the questions involved." There are few reported decisions under the California Identity Theft law, and few FCRA cases go to trial in Central District because the other attorneys who practice in this area are frequently not trial attorneys. The difficulty of the case was increased by the intransigence of BMWF and its counsel.

"(3) the skill requisite to perform the legal service properly." Ms. Tatar and Mr. Brennan performed their tasks with great skill.

11

1  "(4) the preclusion of other employment by the attorney due to
2  acceptance of the case." See No. 1, above.
3  "(5) the customary fee." Per the Attorney's Fees survey, both Ms. Tatar
4  and Mr. Brennan would be well within their rights to choose higher hourly
5  rates, but they are applying to the court at the rates to which Mr. Kim agreed in
6  the fee agreement.
7  "(6) whether the fee is fixed or contingent." This case was a
8  contingency case.
9  "(7) time limitations imposed by the client or the circumstances." The
10 court imposed time limitations on the trial, with which Plaintiffs' counsel dealt
11 successfully.
12 "(8) the amount involved and the results obtained." For a FCRA/Identity
13 Theft case, this verdict ranks as one of the better verdicts in the country for the
14 last several years.
15 "(9) the experience, reputation, and ability of the attorneys." Ms. Tatar
16 and Mr. Brennan both have excellent credentials and reputations. (See Brennan
17 and Tatar Declarations.)
18 "(10) the 'undesirability' of the case." This is not a factor for this fee
19 application.
20 "(11) the nature and length of the professional relationship with the
21 client." This case was a "one-off," as Mr. Brennan has never represented Mr.
22 Kim before and does not have any other cases with him.
23 "(12) awards in similar cases." This verdict is an exemplary FCRA
24 verdict, and is undoubtedly one of the largest, if not the largest, in the Central
25 District for the last several years.
26 (Brennan Decl. ¶ 29.)
27     Consideration of these factors – particularly an evaluation of the significance
28 of the results obtained and the risk of non-payment – support the use of a multiplier.

An adjustment is justified where the quality of service is superior and the success was exceptional. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. Cal. 2000); *White v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 79044, *16 (C.D. Cal. July 15, 2011). Attorneys who take a major risk in accepting cases which may produce nothing in fees, such as this case, are entitled to a multiplier. See *Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1306 (W.D. Wash. 2001).

In determining the appropriate award of attorneys' fees, "the most critical factor is the degree of success obtained." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. Fla. 2001), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "When the results achieved are excellent, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Villano, supra,* at 1308.

It cannot be reasonably disputed that the verdict obtained by counsel for Mr. Kim, totaling $430,000, was a superior result given the strong defensive maneuvers initiated by Defendant at all stages of the litigation. The twelve factors enumerated above weigh in favor of a multiplier being applied. Due to the extensive work required on this case, counsel for Plaintiff were precluded from accepting other cases that might have paid a non-contingent fee. The risk taken of potentially receiving nothing for the work on this case over the past year and a half, plus the excellent result obtained warrant the modest multiplier requested of 1.5. See Brennan Decl., ¶ 29.

State and federal legislatures have relied on attorneys to represent plaintiffs acting as private attorneys general. *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449-50, & fn. 13 (3rd Cir. 1988). Fees sufficient to compensate attorneys for the time spent on such cases must be awarded to encourage enforcement of consumer protection statutes. See *Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164, 1167 (7th Cir. Wis. 1997).

The fee enhancement is fully endorsed by Mr. Kim, who recognizes the very hard work by counsel and their staff. Mr. Kim notes that "their work was very important towards better ensuring that BMWF and other similar financial institutions will take their identity theft and credit reporting responsibilities more seriously." Kim Decl., ¶¶ 2 & 3.

### E. PLAINTIFF IS ENTITLED TO RECOVER TIME SPENT IN NECESSARY TRAVEL.

A lawyer's travel time is recoverable at a professional hourly rate because time spent traveling is time the attorney could not spend performing legal services for clients. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 (9th Cir. Cal. 1986); *In re Pine*, 705 F.2d 936, 938 (7th Cir. Ill. 1983). Travel costs are also recoverable because they would normally be charged to a client paying their own attorneys' fees. *Chalmers, supra; In re Pine, supra.*

### F. PLAINTIFF IS ENTITLED TO RECOVER ATTORNEYS' FEES FOR TIME EXPENDED ON THIS MOTION.

The Ninth Circuit allows the recovery of attorneys' fees for time spent preparing and filing a motion for attorneys' fees and costs. *Jordan v. Multnomah County*, 815 F.2d 1258, 1261, 1264 (9th Cir. Or. 1987).

The Declarations submitted by Plaintiff's counsel detail the time expended in this litigation as of the date of this motion. Any additional time expended preparing a reply brief and opposing any of Defendant's post-trial motions will be submitted in supplemental declarations with the reply. Plaintiff's counsel should be allowed leave of this Court to submit a supplemental declarations supporting any additional attorney fees and costs incurred.

////

## G. BMWF IS NOT ENTITLED TO AN OFFSET FOR PLAINTIFF'S SETTLEMENTS WITH OTHER DEFENDANTS.

BMWF may claim it is entitled to an offset for amounts paid by other defendants in this action who settled prior to trial. This Court has held that there is no right of contribution or indemnification under the FCRA. In *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222 (C.D.Cal. 2007), this Court stated:

> "Defendant's argument that the damages award should be offset by the Equifax settlement is unpersuasive. As Plaintiff correctly notes, the settlement with Equifax was reached under the Fair Credit Reporting Act ('**FCRA**'), a distinct cause of action from the FDCPA verdict against Defendant. **There is no equitable offset for either of these causes of action.** *McMillan v. Equifax Credit Information Services, Inc.*, 153 F.Supp.2d 129, 132 (D.Conn.2001); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754-55 (N.D.Ill.1997). The FDCPA does not contain any provision creating an implied or express right of contribution, indemnification, or equitable credit. Nor does Defendant present any evidence that federal common law creates such a right. Accordingly, the Court finds that no offset is warranted by virtue of Plaintiff's settlement with Equifax."

*Nelson, supra*, 522 F.Supp.2d at 1239 (bold added). See also, *Andrews v. TRW*, 7 F.Supp.2d 1056, 1061 (C.D.Cal. 1998) (credit bureau had no right of contribution or indemnity against a third party in an FCRA action).[2]

The courts are unanimous in expressly holding that there is no right of contribution or indemnification under the FCRA. See *McMillan v. Equifax Credit Information Services, Inc.*, 153 F.Supp.2d 129, 132 (D.Conn. 2001), which includes the following supporting citations:

> "See *Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir.1998) ('A defendant held liable under a federal statute has a right to indemnification or contribution from another only if

---

[2] Affirmed in part, reversed in part on other grounds by *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. Cal. 2000), judgment reversed on other grounds and remanded by *TRW Inc. v. Andrews*, 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001).

15

such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law.'). **Courts have found that the FCRA does not provide a right to indemnification.** See *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754-55 (N.D.Ill.1997) (right to contribution for violations of FCRA is matter of federal law; **contribution not an available remedy**); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000) (no express or implied right to contribution or indemnification under Fair Debt Collection Practices Act)."

*McMillan, supra*, 153 F.Supp.2d at 132 (bold added); *Ricci v. Bancshares of Maine*, 768 F.2d 456 (1st Cir. Me. 1985) (explaining that any such claim for contribution or offset under a federal statute is a matter of federal law).

The settlements with the credit bureaus necessarily involved the FCRA and not the Identity Theft Law. Nevertheless, Plaintiff finds no support for allowing offsets under the Identity Theft Law. The same arguments applicable to the FCRA and California consumer protection statutes noted above would apply to the Identity Theft Law.

## IV. CONCLUSION

For the above-stated reasons, Plaintiff respectfully requests that the Court issue an Order awarding attorneys' fees in the full amount requested herein.

Respectfully submitted,

Dated: Sept. 29, 2015     **LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**

By:    */s/ Robert F. Brennan*

Robert F. Brennan
Attorney for Plaintiff
SEUNGTAE KIM