**Rebecca A. Caley, CBN 131997**
**Christopher M. Domin, CBN 273951**
**CALEY & ASSOCIATES**
**A Professional Corporation**
**265 S. Randolph Avenue, Suite 270**
**Brea, California 92821-5777**
**rcaley@caleylaw.com**
**714/529-1400 Office**
**714/529-1515 Facsimile**
**2030-078**

Attorneys for Defendant,
BMW Financial Services NA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEUNGTAE KIM, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>BMW FINANCIAL SERVICES NA, LLC., a business entity; EQUIFAX INFORMATION SERVICES LLC, a business entity; EXPERIAN INFORMATION SOLUTIONS, INC., a Corporation; TRANSUNION, LLC., a business entity, and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO. 2:14-cv-01752-BRO SH<br><br>Assigned to Hon. Beverly Reid O'Connell<br><br>NOTICE OF MOTION AND MOTION OF DEFENDANT BMW FINANCIAL SERVICES NA, LLC FOR A NEW TRIAL UNDER RULE 59; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>DATE: November 2, 2015<br>TIME: 1:30 p.m.<br>CTRM: 14<br><br>TRIAL DATE: August 25, 2015 |

///

///

///

///

# TABLE OF CONTENTS


Page

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i.

Table of Authorities

Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii.

Federal Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v.

California Statutes.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v.

I. INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. STANDARDS GOVERNING RULE 59 MOTIONS. . . . . . . . . . . . . . . . . 3

III. THE DAMAGES ARE EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Plaintiff Cannot Recover Damages for Injury to Reputation.. . . . . . 5

B. Plaintiff Cannot Recover Damages for Injury to His Creditworthiness.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. THE VERDICT AGAINST DEFENDANT BMW FS ON PLAINTIFF'S CLAIMS ARE AGAINST THE WEIGHT OF THE EVIDENCE OR SUPPORTED BY NO EVIDENCE, AND THE VERDICT IS UNCONSCIONABLE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. Violation of the Fair Credit Reporting Act. . . . . . . . . . . . . . . . . . . . 8

B. Violation of the California Identity Theft Law. . . . . . . . . . . . . . . . 10

i. The Evidence Weighs in Favor of Plaintiff Authorizing the Purchase the Vehicle. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii. Plaintiff Significantly Changed His Testimony at Trial.. . . . 11

iii. Plaintiff Failed to Present Evidence Supporting the Damages Award and Civil Penalty.. . . . . . . . . . . . . . . . . . . . 15

V. THE COURT ERRED IN GIVING OR REFUSING TO GIVE VARIOUS JURY INSTRUCTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A. The Jury Should Have Been Instructed that Plaintiff Could Not Recover Damages Under the FCRA for a Dispute Made Directly with Defendant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. The Jury Should Have Been Further Instructed on How a Determination of a "Reasonable Investigation" is Made Under the FCRA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Cases** **Page**

*Air-Sea Forwarders, Inc. v. Air Asia Co.*,
880 F.2d 176, 190 (9th Cir. 1989) . . . . . 4

*Chiang v. Verizon New England Inc.*,
595 F.3d 26, 38 (1st Cir. 2010). . . . . . 19

*Del Monte Dunes v. City of Monterey*,
95 F.3d 1422, 1435 (9th Cir. 1996). . . . . 4

*Gorman v.Wolpoff*,
584 F.3d 1147, 1154 (9th Cir. 2009). . . . . 18, 19, 20

*Gustafson v. Info Solutions, Inc.*,
2015 U.S. Dist. LEXIS 71280 *13. . . . . 19

*Hariton v. Chase*,
2010 U.S. Dist. LEXIS 88659, *13 (C.D. Cal 2010). . . . . 8

*Johnson v. AVLT Trucking Co., Inc.*
412 F.3d 1138, 1144 (10th Cir. 205). . . . . 8

*Johnson v. Wells Fargo Home Mortg., Inc.*
558 F.Supp. 2d 1114, 1122-23 (D. Nev. 2008) . . . . . 8

*Landes v. Constr. Co., Inc. v. Royal Bank of Canada*,
833 F.2d 1365, 1371 (9th Cir. 1987). . . . . 3, 4

*Moist Cold Refrigerator Co. v. Lou Johnson Co.*,
249 F.2d 246 (9th Cir. 1957). . . . . 3

*Molski v. M.S. Cable Inc.*,
481 F.3d 724, 729 (9th Cir. 2007). . . . . 4

*Munafo v. Metropolitan Transp. Auth.*
(2nd Cir. 2004) 381 F3d 99, 105. . . . . 15

*Murphy v. City of Long Beach*,
914 F.2d 183, 186 (9th Cir. 1990). . . . . 3

*Nelson v. Chase Manhattan Mortgage Corp.*,
282 F.3d 1057, 1059-60 (9th Cir. 2002) . . . . . 18

# TABLE OF AUTHORITIES

**Cases** | **Page**

*Rattray v. City of National City*,
51 F.3d 793, 800 (9th Cir. 1994) . . . . . . . . . . 3

*Roy v. Volkswagen of National City*,
51 F.3d 793, 800 (9th Cir. 1990) . . . . . . . . . . 3

# TABLE OF AUTHORITIES

## Federal Statutes and Rules

Page

15 United States Code
section 1681o. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
section 1681s-2(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
section 1681s-2(d).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
section 1681s-(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure
Rule 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## California Statutes

*Civil Code* section 1798.93. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Civil Code* section 1798.93(c)(6)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Civil Code* section 1798.93(b)(6)(C).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Federal Treatise

11 C. Wright & A. Miller, FEDERAL PRACTICE
AND PROCEDURE, §2805, at 55 (1995). . . . . . . . . . . . . . . . . . . . . . . . 3, 4

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 2, 2015, at 1:30 p.m., in Courtroom 14 located at 312 N. Spring Street, Los Angeles, California 90012, Defendant BMW Financial Services NA, LLC., a Delaware limited liability company ("BMW FS" and/or "Defendant), named as BMW Financial Services NA, LLC, a business entity will and hereby does respectfully move this Court, pursuant to Federal Rule of Civil Procedure 59, for an order granting a new trial. By this motion, Defendant argues that the Jury Verdict's excessive damages not supported by the evidence presented and was against the weight of the presented evidence. Defendant also argues that the court erred in refusing to give various jury instructions.

This Motion is further based on this Notice, Memorandum of Points and Authorities, the concurrently filed Declaration of Rebecca A. Caley, The Appendix of Exhibits, Request for Judicial Notice and such further argument and evidence as may be presented at the time of hearing on the Motion. This motion is made following the conference of counsel pursuant to L.R. 7-3. Plaintiff's counsel responded that Plaintiff would be opposing the motion, but proposed that if Defendant has any "middle-ground" type proposals to please let him know. As of the date of filing this motion an agreement has not been reached.

Dated: October 1, 2015

CALEY & ASSOCIATES
A Professional Corporation

By: *___/s/ Rebecca A. Caley___*
Rebecca A. Caley
Christopher M. Domin
Attorneys for Defendant,
BMW Financial Services NA, LLC

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I. INTRODUCTION**.

On August 28, 2015, the jury returned a verdict awarding Plaintiff Seungtae Kim ("Plaintiff") damages against Defendant BMW Financial Services NA LLC ("Defendant") under two of his three claims. Specifically, by the jury form interrogatories, the jury found that Plaintiff had suffered damages and that Defendant was liable to Plaintiff in the sum of $250,000 for injury to Plaintiff's reputation and credit worthiness under Plaintiff's claim for violation of the Fair Credit Reporting Act ("FCRA"). [See Appendix of Trial Exhibits ("Appendix") Item No. 1 and Declaration of Rebecca A. Caley, ¶5.] The jury also found that Defendant was liable to Plaintiff in the sum of $150,000 for non-economic damages, with an additional $30,000 civil penalty, under his California Identity Theft Law claim ("ID Theft")

The verdict cannot be upheld and a new trial must be ordered on Plaintiff's claims FCRA and California Identity Theft Law for the fundamental reason that Plaintiff failed to meet his burden of proving damages. **Section III** below demonstrates that any evidence presented by Plaintiff in relation to damages he allegedly suffered, are excessive and solely based upon speculation and guesswork. The verdict is also inconsistent. Because such evidence is pure speculation and the verdict is inconsistent, the court should order a new trial on Plaintiff's claims. **Section IV** demonstrates that the verdict is against the weight of the evidence or supported by no evidence with respect to each of Plaintiff's claims. Because the verdict cannot be upheld under any of Plaintiff's theories, a new trial should be granted. Finally, **Section V** examines instructional error that

led directly to the erroneous verdict and damage award. All of the foregoing are grounds for a new trial should the Court decide to not enter judgment for Defendant outright as requested in the concurrently filed Renewed Motion.

## II. STANDARDS GOVERNING RULE 59 MOTIONS.

Under Federal Rule of Civil Procedure Rule 59, the court has the power and duty to order a new trial whenever, in its judgment, such action is required to prevent injustice. 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, §2805, at 55 (1995). The decision whether to grant a new trial is "confided almost entirely to exercise of discretion on the part of the trial court." *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990); see also *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir. 1957). The court has discretion to grant a new trial when "the verdict is contrary to the clear wright of the evidence, or is based upon evidence which is false, or to prevent a . . . miscarriage of justice." *Rattray v. City of National City*, 51 F.3d 793, 800 (9th Cir. 1994) (quoting *Roy v. Volkswagen of National City*, 51 F.3d 793, 800 (9th Cir. 1990) (ellipsis in original)). Unlike a motion for judgment as a matter of law, "[t]he existence of substantial evidence does not . . . prevent the court from granting the motion for a new trial pursuant to Fed.R.Civ.P. 59 if the verdict is against the clear weight of evidence." *Landes v. Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); 11 C. Wright & A. Miller, supra, §2806, at 65.

In fact, in deciding a motion for new trial, the district court has the right, indeed the duty, to weigh the evidence, assess the credibility of the witnesses,

and need not view the evidence from the perspective most favorable to the prevailing party." *Landes*, 833 F.2d at 1371; see also *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 190 (9th Cir. 1989). In other words, "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.S. Cable Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations omitted.) Here, an examination of the evidence and the legal rulings made throughout the course of trial "the definite and firm conviction that a mistake has been committed . . ." *Landes*, 833 F.2d at 1371-72 (quoting 11 C. Wright & A. Miller, supra, §2806, at 48-49 (1973)). Thus, "it is to be expected that [the court] will grant a new trial." *Id.*

## III. **<u>THE DAMAGES ARE EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE.</u>**

The jury's award to Plaintiff of $250,000 in damages under his FRCA claim and $150,000, plus a $30,000 civil penalty under his ID Theft claim is grossly excessive and based upon speculation. Plaintiff's evidence is not just flimsy, but non-existent on some issues, and therefore allowing the verdict to stand would constitute a miscarriage of justice. A new trial is warranted where "the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based solely on speculation or guesswork." *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

**A. Plaintiff Cannot Recover Damages for Injury to Reputation.**

There was absolutely no evidence admitted during trial that Plaintiff suffered any injury to his reputation. As noted in Defendant's Renewed Motion for Judgment as a Matter of Law, Plaintiff failed to mention his reputation during his entire testimony. And neither did Plaintiff's friend of eighteen (18) years, Young Hoon Seo, during his testimony. [See Court Report Transcript ("CRT") Page No. 255 starting with Line 21 and ending on Page No. 366 at Line 17 for Plaintiff's entire testimony, and starting at Page No. 368 at Line 1 and ending on Page 376 Line 23 for Young Hoon Seo's entire testimony, Vol. II] Furthermore, although Mr. Seungtae Kim and Mr. Seo testified at length, neither ever mentioned the word "reputation" or any synonymous word, and neither did any other of Plaintiff's other witnesses. There was absolutely nothing for the jury to consider on the subject of damage to Plaintiff's reputation and therefore the jury's award of $250,000 is grossly excessive. On that ground alone, the Court must grant a new trial. [See Declaration of Rebecca A. Caley, ¶¶9 and 10.]

**B. Plaintiff Cannot Recover Damages for Injury to his Creditworthiness.**

Any evidence regarding injury to Plaintiff's creditworthiness is also completely lacking. Plaintiff's testimony reflects that he was "denied credit three times" in 2013. However, on cross-examination by Defendant's counsel, Plaintiff admitted and confirmed that he did not know the following:

- When he was denied credit;
- Any documents substantiating any "denial";
- The reason for any "denial."

[See CRT starting with Page No. 352, Line 16 through Page No. 353, Line 7, Vol. II] Upon re-direct examination by his attorney, Plaintiff testified that he was denied credit "sometime" during the year 2013. [See CRT Page No. 313, Lines 1-14 and Page No. 365, Lines 13-19, Vol. II] However, there was zero evidence of any certainty as to when he was allegedly denied credit, for what reason he may have been so denied, and most importantly any evidence attributing any denial to Defendant, nor any creditor for that matter.

Furthermore, as noted in Defendant's concurrently filed JMOL, Defendant cannot be held accountable for the alleged denial of any credit before October 30, 2013, as Defendant did not complete its fraud investigation until that date. [See Admitted "Exhibit 116" BMW Financial Services Letter Denying ID Theft Claim, attached to Appendix as Item No. 3.] Therefore, it could have been only during the months of November and December of 2013 that Plaintiff could attempt to claim any damages caused by Defendant. Plaintiff testified that he only allegedly applied for credit during the year 2013. This means that at least ten (10) months of the year 2013, Defendant could not be held accountable for the denial of any of Plaintiff's alleged credit requests. Further, it was a stipulated fact between the parties that all credit reporting agencies ceased reporting Defendant's tradeline on Plaintiff's credit report by May 2014. [See Admitted "Exhibit 164" Stipulation by the parties, attached to Appendix as Item No. 4 and CRT Page No. 580, Lines 2-22 Vol. III where it was read to the Jury by the Court] Plaintiff did not know "when" during 2013 he allegedly applied for credit and was denied, and did not present any evidence in support of his hearsay testimony, much less any evidence attributing the reason for any of the alleged

denials. As no evidence was presented on damage to Plaintiff's creditworthiness the Jury's imposition of $250,000 in damages was based entirely upon speculation and conjecture.

There is also absolutely no evidence as to what Plaintiff's creditworthiness was to begin with from October 30, 2013 through December 31, 2013, much less through May 2014 when the credit reporting ceased. Therefore, the jury not only had no idea as to what Plaintiff's baseline creditworthiness was from October 2013 through December 30, 2013, or 2014 for that matter, it further had no information as to what impact Defendant's credit reporting had on his credit report, much less the impact of other creditors, such as Hyundai, Time Warner, Wells Fargo or other creditors had on Plaintiff's credit report and ultimately, his overall creditworthiness.

Additionally, a word search of the entire trial court transcript of all proceedings reveals that the word "reputation" only appeared in the record when: 1) Plaintiff's counsel was arguing the content of the jury verdict outside the presence of the Jury; 2) during the Court's reading of the Jury Instructions to the Jury and 3) during closing argument when Plaintiff's counsel suggested these damages for the first time, asking the Jury to insert the figure of $250,000. [See CRT Page No. 304, Lines 9-14 during verdict form argument of counsel, Page No. 573, Line 19 during the Court reading of the Jury Instructions, Vol. III and Page Nos. 603, Lines 18-25 through Page 604, Lines 1-25, Vol. III during Plaintiff's closing argument and Declaration of Rebecca A. Caley, ¶¶9-10.]

Finally, a word search of the transcript of the word "creditworthiness" or "credit worthiness" again, only appeared in the record when the Shelly BMW

witness called by Plaintiff generally referred to the hypothetical "creditworthiness" of a proposed customer during his testimony, and the same was true for Plaintiff's witness Thomas A. Tartar, in considering a hypothetical customer. The words were never mentioned in the context of the Plaintiff's specific creditworthiness, and was again mentioned when counsel was discussing the verdict form before the Court outside the presence of the Jury, and again during Plaintiff's closing argument. [See CRT at Page Nos. 603, Lines 18-25 through Page 604 Lines 1-25, Vol. III and Declaration of Rebecca A. Caley, ¶11.] The Jury had absolutely no evidence upon which to award Plaintiff $250,000. The amount is grossly excessive and a new trial should be granted.

## IV. THE VERDICT AGAINST DEFENDANT ON PLAINTIFF'S CLAIMS ARE AGAINST THE WEIGHT OF THE EVIDENCE OR SUPPORTED BY NO EVIDENCE, AND THE VERDICT IS UNCONSCIONABLE.

### A. Violation of the Fair Credit Reporting Act

The jury found BMW FS liable for a negligent violation of the FCRA. To prevail on his FCRA claim, however, Plaintiff bore the burden of proving by a preponderance of the evidence that he suffered actual damages as a result of BMW FS' alleged violation. 15 U.S.C. §1681o (stating that "actual damages sustained" are recoverable for negligent noncompliance with FCRA"); *Johnson v. Wells Fargo Home Mortg., Inc.* 558 F.Supp. 2d 1114, 1122-23 (D. Nev. 2008) (stating that "Plaintiff bears the burden of proving that his damages were, in fact, caused by Defendant's violation"); *Hariton v. Chase*, 2010 U.S. Dist. LEXIS 88659, *13 (C.D. Cal 2010) (stating "damages are an element of a

claim for a negligent violation of the FCRA). As noted above, in finding that BMW FS negligently violated the FCRA, the jury award Plaintiff $250,000 for damage to Plaintiff's reputation and creditworthiness.

As noted above, there was absolutely no evidence presented at trial that Plaintiff's reputation had been damaged. Likewise, Plaintiff's award for damages to his creditworthiness was entirely based on sheer guesswork. During trial, Plaintiff testified that he had applied for credit three different times. Plaintiff had no documentary evidence supporting his testimony. He did not know the exact dates these denials took place. There was no evidence of his credit score at the time these rejections took place. There was no evidence that the three businesses rejected Plaintiff's applications for credit because of the BMW FS' tradeline. As the Court in *Johnson* noted, **"…[A] consumer report is vital to Plaintiff's claim. Without the consumer report, a plaintiff would essentially be able to claim every undesirable financial event he encountered since the defendant's violation without actually proving the event occurred because of the defendant violation, rather than due to some other reason."** [Emphasis added] *Johnson*, *supra* at 1123. Without evidence regarding the credit report relied upon by these entities at the time it made any of the alleged credit decisions denying Plaintiff's alleged applications, Plaintiff's claim of damages to his credit reputation fails. Likewise, there is absolutely no evidence as to Plaintiff's reputation having been damaged. As a result, Plaintiff did not satisfy his burden of proof under the FCRA and the verdict is against the weight of evidence on the damages element.

///

### B. Violation of the California Identity Theft Law

The jury also found Defendant liable under the California Identify Theft Law, and awarded Plaintiff $150,000 in non-economic damages and a $30,000 civil penalty. As noted in Defendant's JMOL, as an initial element, Plaintiff bore the burden of proving by a preponderance of the evidence the threshold question that he was a victim of identity theft. [See CRT Page Nos.570, Line 24 through Page 571, Line 9, Vol. III where the Court reads Jury Instruction No. 29 - not an exhibit.] In other words, Plaintiff had to establish that his personal identifying information was used without his consent. (See *California Civil Code* §1798.93) The evidence does not weigh in Plaintiff's favor on this element. Instead, the evidence weighs strongly against it.

#### i. The Evidence Weighs in Favor of Plaintiff Authorizing the Purchase of the Vehicle.

As noted in Plaintiff's concurrently filed Renewed JMOL, it is undisputed and unrefuted by Plaintiff that the signature appearing on the signature line of the Exhibit "101", Power of Attorney, is in fact Plaintiff's signature. [See Admitted "Exhibit 116" BMW Financial Letter Denying ID Theft Claim, attached to Appendix as Item No. 3] Additionally Plaintiff's own Forensic Document Examiner, testified that the signature appearing on the Exhibit "101", Power of Attorney, was Plaintiff's signature and that the text, title and signature line were all printed on the Power of Attorney at the same time. [See CRT Page Nos. 416-418, Vol. I and attached to Appendix as Item No. 2] Likewise, Defendant's expert Forensic Document Examiner concurred with Plaintiff's expert regarding the timing of the text, title and signature line on the Power of Attorney with one

small difference, that being that he opined that all of the text appearing on the Exhibit 101 Power of Attorney was printed "in one continuous action", which would include the date. [See CRT Page Nos. 416-418 Vol. III] Finally, Mike Kim testified that Seungtae Kim signed the Power of Attorney in front of him. Any testimony offered to the contrary by Plaintiff was marred by extremely credibility issues.

**ii. Plaintiff Significantly Changed His Testimony at Trial.**

Plaintiff's credibility regarding many critical foundational facts in support of his claims against Defendant were seriously called into question during trial, if not entirely destroyed. These discredited facts go to the heart of Plaintiff's allegations against Defendant and Defendant's defenses, including and his credibility attacks against his former colleague and friend, Mike Kim, who Plaintiff alleges used his personal information without his authorization to purchase the subject BMW. This allegation is made despite evidence establishing that Plaintiff executed a Power of Attorney authorizing Mike Kim to make such a purchase. The following are just some of Plaintiff's discredited claims:

1. At trial, it was an established and unrefuted fact that Plaintiff's signature appeared on the Exhibit 101 Power of Attorney. Further, his own expert forensic document examiner, Bruce Greenwood, opined that the title and text of the Power of Attorney authorizing Mike Kim's use of Plaintiff's personal information to purchase a vehicle was on the Power of Attorney Exhibit 101 at the time of the signature of the document. Defendant's expert concurred with Mr. Greenwood. [See CRT, Page Nos. 416-418, Vol. I and Page Nos. 416-418 Vol. II and Exhibit "101" attached

to Appendix as Item No.2]

2. At trial Plaintiff lied about the nature of his relationship with Mike Kim as being strictly "professional and work related" stating that it was limited to occasional lunches and after work dinners. [CRT Page No. 316, Lines 1-21, Vol II]:

- Plaintiff and his wife went on a ski vacation to Steamboat Springs, Colorado with Mike Kim's family over the Thanksgiving Holiday. [CRT Page Nos. 317, Lines 24 through Page 321 Line 4 and Exhibit "162" photograph attached to Appendix as Item No. 5]

-Plaintiff would play tennis with Mike Kim from time to time on the weekend. [CRT Page No. 321, Lines 1-6, Vol. II]

3. At trial, Plaintiff misrepresented what Angela Jarosik of BMW FS told him by testifying that Ms. Jarosik told Plaintiff to not send any more documents to BMW FS in support of his I.D. Theft claim, when in fact she told him the opposite. [CRT Page No. 222, Lines 1-17, Vol. II]

- Angela Jarosik invited Plaintiff to send any other additional documents to BMW FS to consider with regard to his ID theft claim, but he chose to not send her any more documents that Plaintiff admitted on cross-examination. [CRT Page Nos. 324, Line 24 through Page 326, Line 20 and Page No. 365, Line 23 through Page 366, Line 17, Vol II]

4. Despite Plaintiff claiming to immediately know the identity of his alleged ID thief, Mike Kim, he failed to include his name in the "suspect" space in the ID Theft law enforcement reports he filed for three months,

despite including his name in the Affidavits of Forgery he presented to creditors so he could be relieved of liability for any debts. [CRT Page No. 365, Line 23 through Page No. 366, Line 17, Vol. II, and Trial Exhibits "46", "50", "51" and "59." Attached to Appendix as Item Nos. 6, 7, 8, and 9.]

5. Plaintiff testified during the trial that he was asked twice by Mike Kim if he could use his personal information to buy a car in 2007 and 2011. [CRT Page Nos. 268, Line 4 through 270, Line 1 and Pages 335, Line 25 through page 336, Line 16 Vol. II]

- Plaintiff testified during his deposition that Mike Kim never asked him to help him purchase an automobile. [CRT Page No. 337, Line 9 through Page 338, Line 23, Vol. II]

6. Plaintiff testified during the trial that he never requested from Experian the two (2) April 11, 2011 Credit Reports that contained the BMW FS account for the BMW purchased by Mike Kim, thereby refuting his claim that he did not know about the BMW FS debt until 2013; that he received in the mail the Credit Reports unsolicited; that he never entered his personal information onto the internet to obtain copies of the two Experian Credit Reports and never reviewed them after he received them. [CRT Page Nos. 344, Line 4 through Page 347, Line 16; Page 348, Line 25 through 352, Line 15, Vol II and Trial Exhibits "153" and "154" attached to the Appendix as Item Nos. 10 and 11.]

-Experian witness Mary Ellen Marquez testified that Experian never mails any credit reports to customers without their express request,

and that the two Exhibit “153" and “154" April 11, 2011 Experian Credit Reports were ordered online after someone entered online Plaintiff's personal information including his social security number and answered certain security questions. [CRT Page 400, Line 24 through 407, Line 22, Vol. III and Exhibits "153" and "154" attached to Appendix as Item Nos. 10 and 11.]

7. Plaintiff has only ever spelled and referenced his first name as one word ("Seungtae") versus two words ("Seung Tae"), but his California Acupuncture License, a copy of which is on his wall at his office and his wallet copy spell his name with two words. Plaintiff acknowledged personally preparing the application and providing the information for the issuance of his Acupuncture license. [CRT Page Nos. 357, Line 10 through Page 360, Line 13, Vol. II]

8. Plaintiff claims that his credit was denied three times during the year 2013 by Bank of America, Toyota and Audi. [CRT Page No. 352, Lines 16-23, Vol. II]

- Plaintiff does not remember when he applied for credit at Bank of America, Toyota and Audi.

-Plaintiff does not have any documents evidencing the denial of any credit request. [CRT Page Nos. 352, Line 24 through Page 354, Line 9, Vol. II]

As represented by the eight specific examples highlighted above, Plaintiff's trial testimony was chalked full of misrepresentations and significant departures from his deposition testimony. His credibility was extremely tarnished.

**iii. Plaintiff failed to Present Evidence Supporting the Damages Award and Civil Penalty.**

Additionally, even assuming arguendo that the weight of evidence established that Plaintiff was a victim of identity theft, he failed to present sufficient evidence supporting a finding of non-economic damages or civil penalty against BMW FS, and such a finding creates an inconsistency in the Verdict. As previously noted in Defendant's JMOL, Plaintiff's counsel argued to the Jury under its FRCA claim that Plaintiff was entitled to non-economic damages in the form of emotional distress and mental anguish for the actions of the Defendant, however, the Jury failed to award Plaintiff any such damages and wrote a "0" on that line. [See CRT Page No. 600, Lines 15-22 Vol. III and Redacted Verdict Form, Question II-3 attached to Appendix as Item No. 1.] Plaintiff's FRCA and ID Theft claims were based on essentially the same set of facts, namely Plaintiff's claim of identity theft and Defendant's subsequent investigation. The Jury's award of $150,000 for non-economic damages for which the Jury awarded zero under the FRCA claim is inconsistent and suggested possible confusion as to the meaning of non-economic damages. If a jury verdict is "ineluctably inconsistent" then a trial court must order a new trial. (See generally, *Munafo v. Metropolitan Transp. Auth.* (2nd Cir. 2004) 381 F3d 99, 105 (emphasis in original); *Johnson v. ABLT Trucking Co., Inc.* (10th Cir. 2005) 412 F.3d 1138, 114 (noting "to be irreconcilably inconsistent, the jury's answers must be logically incompatible, thereby indicating the jury was confused or abused its power".) Such is the case here.

Finally, the Jury erred again with its finding of a civil penalty of $30,000,

where it was required to find by "clear and convincing" evidence three pre-requisite facts before it could impose any penalty in any amount. The Defendant would concede the first fact, that being that Plaintiff filed an identity theft claim. But the second and third pre-requisite facts are not supported by any evidence that rises to the level of "clear and convincing" evidence.

The second pre-requisite fact is that Defendant failed to "diligently" investigate Plaintiff's notification of a possible identity theft. [See *California Civil Code* §1798.93(c)(6)(B)] It is arguable that had the lower standard of a "preponderance of the evidence" been in the evidentiary finding requirement the Jury's finding could be considered sufficient, but the Jury specifically found that the Defendant maintained reasonable procedures in place to comply with the California Consumer Credit Reporting Act to investigate the same claim of identity theft. [See CRT Page No. 600, Lines 15-22 Vol. III and Redacted Verdict Form, Question II-3, attached to Appendix as Item No. 1.] By virtue of the Jury finding that Defendant had reasonable investigation procedures in place to investigate claim of identity theft, it is irreconcilable to sustain an award that finds that it failed to diligently investigate the Plaintiff's claim of identity theft, when considering that a "clear and convincing" standard is required.

And should the Court disagree with respect to the foregoing second pre-requisite, there simply cannot be any disagreement with respect to the lack of finding of the third pre-requisite, where the Plaintiff was required to establish by clear and convincing evidence that Defendant continued to pursue its claim, as no such evidence was presented to the jury by Plaintiff. There can be no specific citation to the record in support of this element. Plaintiff bore the burden of

proving by clear and convincing evidence that the Defendant among other actions, "continued to pursue its claim" against Plaintiff after it was presented with facts that were later held to entitle Plaintiff to judgment. *Cal. Civ. Code* 1798.93(b)(6)(C). Clear and convincing evidence is a higher burden of proof and requires a finding that a fact is "highly probable" of being true. [See Jury Instruction No. 3 attached to Appendix as Item No. 12) Here, again, there was absolutely no evidence presented by the Plaintiff either by way of testimony or exhibits that BMW FS continued to pursue its claim against Plaintiff following the conclusion of its identity theft investigation on October 30, 2013.

## V. THE COURT ERRED IN GIVING OR REFUSING TO GIVE VARIOUS JURY INSTRUCTIONS.

### A. The Jury Should Have Been Instructed that Plaintiff Could Not Recover Damages Under the FCRA for a Dispute Made Directly with Defendant.

Defendant proposed an instruction reflecting that:

> "Under the FCRA, a consumer cannot bring a lawsuit against a furnisher for failure to conduct a reasonable investigation when the consumer disputes the information directly with the furnisher."

(See Defendant's Proposed Special Jury Instruction No. 17, attached to Appendix as Item No. 13). At the hearing on the Proposed Jury Instructions, the court declined to give the instruction, finding that it was argumentative. (See Declaration of Rebecca A. Caley). Defendant's proposed instruction, however, correctly reflects Federal law. Defendant was entitled to the instruction because Plaintiff disputed his account with Defendant both directly and indirectly through

the CRAs. Whether Plaintiff's disputes were direct or indirect is of extreme importance when determining a credit furnisher's liability under the FCRA.

The language of the FCRA expressly limits a private right of action to only damage arising out of a furnisher's failure to comply with the investigation requirements triggered upon a CRA dispute notice. 15 U.S.C. § 1681s-(c)(1). In other words, a consumer cannot bring a lawsuit or recover damages against a credit furnisher when the consumer disputes the information directly with the furnisher. *Id.* Enforcement of such "direct disputes" is left to the federal and state agencies. 15 U.S.C. § 1681s-2(d). During trial, Plaintiff heavily relied on the information included in the Identity Theft Affidavit and Police Reports that he personally provided to Defendant when directly disputing the account at issue. However, a FCRA claim cannot be based on a direct dispute. *Gorman v.Wolpoff*, 584 F.3d 1147, 1154 (9th Cir. 2009) (citing 1681s-2(b) and *Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1059-60 (9th Cir. 2002). A jury instruction on this correct statement of Federal law was not argumentative, and was necessary as to protect Defendant against undue prejudice and exposure to damages Plaintiff was not legally entitled to receive.

**B. The Jury Should Have Been Further Instructed on How a Determination of a "Reasonable Investigation" is Made Under the FCRA.**

Defendant also proposed an instruction setting forth the following:

"The term "reasonable investigation" under the Fair Credit Reporting Act depends on the facts of a particular case, most importantly is the Credit Reporting Agency's description of the dispute in its notice. An

investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."

[See Defendant's Proposed Special Jury Instruction No. 3, attached to Appendix as Item No. 14). At the hearing on the Proposed Jury Instruction, the court declined to give the instruction, finding that it too was argumentative and was dicta from the Ninth Circuit's *Gorman, supra* decision. [See Declaration of Rebecca A. Caley]. As discussed above, a furnisher's liability is not triggered under the FCRA until it receives notification from a CRA. Once the furnisher receives the CRA notification then it must conduct a reasonable investigation. 15 U.S.C 1681s-2(b).

What constitutes a reasonable investigation was discussed at length by the Ninth Circuit in the *Gorman*. *Gorman* set forth that in determining reasonableness the "pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, supra at 1157; *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). In fact, a furnisher does not have to investigate further than what is described in the notice of dispute. *Gustafson v. Info Solutions, Inc.*, 2015 U.S. Dist. LEXIS 71280 *13 (citing *Gorman*, supra at 1157.). In concluding its analysis of what constitutes a "reasonable investigation" the Ninth Circuit stated that "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate. *Id.* at 1161. A lack of instruction regarding how a determination of "reasonable

investigation" under the FCRA is made was severely prejudicial to Defendant. Without it, the jury may very well have assumed that because they determined Plaintiff was a victim of identity theft that Defendant's investigations were therefore automatically "unreasonable." An instruction would have clarified that it was entirely possible for the outcome of Defendant's identity theft investigation to be "inaccurate" yet Defendant's investigation still reasonable. Without that instruction, the jury was not instructed to consider that possibility. When this argument was made at the hearing on the jury instructions, the Court determined that this language of *Gorman* was "dicta", yet Defendant would respectfully disagree, and contends that the jury's verdict was very possibly the result of the lack of this instruction.

## VI. CONCLUSION

For the foregoing reasons, the court should grant BMW FS a new trial.

Dated: October 1, 2015

CALEY & ASSOCIATES
A Professional Corporation

By: */s/ Rebecca A. Caley*
Rebecca A. Caley
Christopher M. Domin
Attorneys for Defendant,
BMW Financial Services NA, LLC