**Rebecca A. Caley, CBN 131997**
**Christopher M. Domin, CBN 273951**
**CALEY & ASSOCIATES**
**A Professional Corporation**
**265 S. Randolph Avenue, Suite 270**
**Brea, California 92821-5777**
**rcaley@caleylaw.com**
**714/529-1400 Office**
**714/529-1515 Facsimile**
**2030-078**

Attorneys for Defendant,
BMW Financial Services NA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEUNGTAE KIM, an Individual,

Plaintiff,

vs.

BMW FINANCIAL SERVICES NA, LLC., a business entity; EQUIFAX INFORMATION SERVICES LLC, a business entity; EXPERIAN INFORMATION SOLUTIONS, INC., a Corporation; TRANSUNION, LLC., a business entity, and DOES 1-10, Inclusive,

Defendants.

CASE NO. 2:14-cv-01752-BRO SH

Assigned to Hon. Beverly Reid O'Connell

REPLY TO THE OPPOSITION OF PLAINTIFF SEUNGTAE KIM TO BMW FINANCIAL SERVICES NA, LLC'S MOTION FOR NEW TRIAL UNDER RULE 59

DATE: November 2, 2015
TIME: 1:30 p.m.
CTRM: 14

TRIAL DATE: August 25, 2015

# TABLE OF CONTENTS

Page


Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i.

Table of Authorities

Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii.

Federal Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv.

California Statutes.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv.

I. INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. THE CASES CITED BY PLAINTIFF ARE OUT OF LINE WITH THE JURY'S AWARD.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. PLAINTIFF FAILED TO ESTABLISH THAT HE SUFFERED ACTUAL DAMAGES UNDER THE FCRA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. PLAINTIFF'S INFERENCES ARE UNREASONABLE. . . . . . . . . . . . . . 4

V. THE EVIDENCE WEIGHS IN FAVOR OF PLAINTIFF HAVING AUTHORIZED THE PURCHASE OF THE VEHICLE.. . . . . . . . . . . . . . . 7

VI. PLAINTIFF'S ATTEMPTS TO CURE HIS IMPEACHMENT FAIL. . . . 9

A. Plaintiff's Personal Relationship with Mike Kim. . . . . . . . . . . . . . . 9

B. Plaintiff's Communications with Ms. Jarosik.. . . . . . . . . . . . . . . . . . 9

C. The April 11, 2011 Experian Credit Reports.. . . . . . . . . . . . . . . . . 10

D. Conflicting Testimony Regarding Mike Kim.. . . . . . . . . . . . . . . . . 19

VII. PLAINTIFF DID NOT PRESENT SUFFICIENT EVIDENCE THAT DEFENDANT CONTINUED TO PURSUE ITS CLAIM.. . . . . . . . . . . . . 11

VIII. THE DISPUTED JURY INSTRUCTIONS SHOULD HAVE BEEN GIVEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IX. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Banja v. Experian Info Solutions, Inc.*,
473 Fed. Appx. 699, 700 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Drew v. Equifax Info Servs., LLC*,
690 F.3d 1100, 1104-1106 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Jorgensen v. TRW, Inc*,
Case No. CV96-286-JE (https://advance.lexis.com
(type in *Jorgensen*; then follow Jury Verdicts and
Settlements hyperlink). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gorman v. Wolpoff*,
584 F.3d 1147, 1157 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Grigoryan v. Experian Info. Solutions*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*Guimond v. Trans Union Credit Information,*
45 F.3d 1239, 1333 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Siemons v. First U.S.A. Bank, N.A.*,
2008 LEXIS 23343 (Cal. Sup. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Soghomonian v. Trans Union LLC,*
2004 LEXIS 3852 (E.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# TABLE OF AUTHORITIES

Page

## Federal Statutes and Rules

15 U.S.C. section 1681s-(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
15 U.S.C. section 1681s-2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## California Statutes

*Civil Code* section 1798.93(c)(6)(c)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION.

Plaintiff Seungtae Kim's ("Plaintiff") Opposition to Defendant BMW Financial Services' ("Defendant") Motion for New Trial essentially requests that the Court ignore that the clear weight of evidence is in favor of Defendant. Despite Plaintiff's arguments to the contrary, the jury's monetary awards to Plaintiff under the Fair Credit Reporting Act ("FCRA") and California Identity Theft Law ("CA ID Theft") remain grossly excessive and unsupported by the evidence. Additionally, in regards to the $30,000 civil penalty awarded under the CA ID Theft law, Plaintiff's Opposition concedes that there was not sufficient evidence satisfying all three necessary elements by the clear and convincing evidentiary standard. Plaintiff's Opposition sets forth unreasonable inferences that the jury could never have drawn from the scant evidence presented by Plaintiff. The Court should not be persuaded by Plaintiff's misrepresentations. A new trail should be granted.

## II. THE CASES CITED BY PLAINTIFF INVOLVE EXTREME UNCONSCIONABLE WILLFUL CONDUCT.

Plaintiff's Opposition cites various verdicts allegedly supporting his claim that the jury's damages award is in line with verdicts in similar cases. These verdicts highlight the absurdity of the jury's award. In *Drew v. Equifax,* the plaintiff's identity was stolen by a medical professional while he was under going treatment for leukemia. The plaintiff unsuccessfully attempted to clean up his credit through disputes to the CRAs for nearly four years, including while he was undergoing treatment, before having to file a lawsuit. *Drew v. Equifax Info Servs., LLC*, 690 F.3d 1100, 1104-1106 (9th Cir. 2012). Ultimately, the jury awarded Plaintiff $1,021,327 against Equifax for its ***willful violations*** of the FCRA. [Caley

Decl., ¶2, Item No. "18" Verdict Form to Supp. Appendix and RJN.] Likewise, *Thomas v. Trans Union* also involved egregious conduct by a CRA. The jury found Trans Union liable for ***willful*** violations during a six year period and awarded punitive damages in the amount of $5 Million. [Caley Decl., ¶3, Item No. "19" Verdict Form to Supp. Appendix and RJN; *See also* "Jury Awards $5.3 Million for Credit Report Errors", http://articles.latimes.com/2002 /jul/31/business/fi-credit31.]

In *Miller v. Equifax*, a jury award 18.4 million dollars in punitive damages for Equifax's **willful** violations of the FCRA. At trial, evidence showed that Equifax had mixed up millions of customer credit files resulting in wide spread inaccurate information. Evidence also showed that the Plaintiff repeatedly telephoned and faxed Equifax for two years but Equifax never investigated her claims because it was its policy not to start an investigation until a lawsuit was filed. [Caley Decl., ¶4, Item No. "20" Verdict Form to Supp. Appendix and RJN; *See also* "Equifax Hit with $1.62M in Punitive Damages for Failing to Fix Credit Report", http://thenationaltriallawers.org/2014/01/equifax-1-62m-in-punitive damages-over-credit-report.] Finally, the case of *Jorgensen v. TRW, Inc.*, the plaintiff had received inaccurate credit reports from 1990 to 1997 - a seven year period. *Jorgensen v. TRW, Inc*, Case No. CV96-286-JE; (https:// advance.lexis. com (type in *Jorgensen*; then follow Jury Verdicts and Settlements hyperlink.) Here, the jury awarded Mr. Kim $250,000 in specific credit reputation and creditworthiness damages without a finding of any **willful** violations by the jury. [See Redacted Verdict Form, Item 1.]

The time period wherein Plaintiff could have incurred any creditworthiness and reputation damages is not in line with the above cited cases. Defendant cannot be held accountable for the alleged denial of any credit before October 30, 2013,

because it did not complete its fraud investigation until that date. However, even taking Plaintiff's proposed date of September 18, 2013, Defendant's first response to the CRAs' notice of dispute, the evidence presented at trial regarding Defendant's alleged credit damages does not change. [Plaintiff's Opp., p.5, lines 5-9.] Plaintiff could only attempt to claim any damages caused by Defendant during the months of November and December of 2013, and not for any time during 2014. Clearly, the window of time that Defendant's tradeline appeared on Plaintiff's credit report and the time Plaintiff spent attempting to clean up his credit are remarkably different than Plaintiff's cited cases.

Finally, the cases cited by Plaintiff relating to the jury's $150,000 noneconomic damages award under his CA ID Theft law claim are not in line with this matter. *Siemons v. First U.S.A. Bank, N.A.,* 2008 LEXIS 23343 (Cal. Sup. 2008) reflects that the plaintiff was awarded **$0** rather than the $400,000 as claimed by Plaintiff's Opposition. In *Soghomonian v. Trans Union LLC,* 2004 LEXIS 3852 (E.D. Cal. 2003) the jury awarded Plaintiff $614,900 in actual damages along with $325,000 in punitive damages against CRA Trans Union for its ***willful violations***. *Id.* As a result of Trans Union's conduct, Mr. Soghomonian was forced to retire from the Marine Corp. *Id.* The ordeal is also described as lasting 10 years. *Id.* The facts of the cases cited by Plaintiff are extremely distinguishable and the jury found no willful violation by BMW FS. Therefore, any award in the ballpark of the above cited cases is extremely excessive.

## III. PLAINTIFF FAILED TO ESTABLISH THAT HE SUFFERED ACTUAL DAMAGES UNDER THE FCRA.

In support of the jury's award for creditworthiness and reputation damages,

Plaintiff cites his attorney's closing argument. (Oppo., p. 4: 8-12.) While Preliminary Jury Instruction No. 5 expressly instructed the jury that closing arguments are not evidence, Defendant understands why Plaintiff would make such a citation- because there is no other direct reference in the trial transcript to Plaintiff's credit worthiness and reputation. Plaintiff's Opposition attempts to skirt around the issue that in order to recover damages under the FCRA for a negligent violation, as he needed to establish that he suffered actual damages by a preponderance of the evidence. *Grigoryan v. Experian Info. Solutions*, 84 F. Supp. 3d 1044 (C.D. Cal. 2014) (citing *Banja v. Experian Info Solutions, Inc.,* 473 Fed. Appx. 699, 700 (9th Cir. 2012). Plaintiff cites the case of *Guimond v. Trans Union Credit Information,* 45 F.3d 1329, 1333 (9th Cir. 1995) in support of the proposition that Plaintiff does not need to establish denial of credit to establish actual damages to his credit reputation or creditworthiness. However, *Guimond* involved emotional distress damages, not creditworthiness or reputation. In this case, Plaintiff was not awarded any emotional distress damages under the FRCA, which would have clearly been within the "Non-Economic" category set forth on the Verdict Form. Defendant has been unable to locate any authority holding that a Plaintiff claiming a negligent violation of the FCRA can recover damages to his reputation and creditworthiness without providing any evidence of actual damages aside from his own testimony. Therefore, the jury's award was grossly excessive and unsupported by the facts.

## IV. PLAINTIFF'S INFERENCES ARE UNREASONABLE.

Plaintiff's Opposition sets forth eleven (11) inferences, 6 of which are not supported by any citation to the record, in support of his argument that his credit worthiness/reputation damages are appropriate. Plaintiff draws inferences such as

his credit was damaged by Defendant's derogatory repossession and 90 day late trade remarks on his credit report, that prior to the identity theft his credit was good enough to purchase three vehicles and that he never missed a payment to any credit at any time. [Plaintiff's inferences 1-3.] However, Plaintiff's expert never identified by date the credit report he examined in reference to the repossession and 90 day remarks. His expert tried to interpret Plaintiff's proposed Exhibit "53", however that exhibit was denied admittance. Additionally, as to his credit prior to the alleged identity theft, there was no evidence submitted establishing Plaintiff's credit score prior to the alleged theft. Creditworthiness is a based on many factors, not just Plaintiff's payment history. Therefore, Plaintiff's first three inferences are unreasonable provided the evidence submitted to the jury.

Plaintiff then conjures the following inferences: 4) after Plaintiff was denied credit three times he was discouraged from pursuing additional opportunities; 5) Defendant's "very serious" remarks on Plaintiff's credit report were a substantial contributing factor to his credit denials; and 6) the credit denials could only have taken place between September to December 2013. Each of this inferences is unreasonable. Plaintiff's testimony establishes that he only applied for credit on three occasions. He did not know the dates he applied for credit, who he spoke with or the specific locations of the dealerships. That he was discouraged from applying for additional credit opportunities is pure speculation of counsel, not evidence. [CRT 313:2-11; 353:13-354:4 and 365;13-19, Vol. II]. As to the "very serious" remarks and the three credit denials occurring between September 2013 and December 2013, there is no evidence to support these conclusions. Plaintiff's only credit report entered into evidence was October 4, 2014. Yet Plaintiff testified that

he was still filing out an affidavit for Hyundai in November 2014. Plaintiff also testified that he was denied credit sometimes after Defendant's tradeline came on his credit, which was April 2011. [Trial Exhibits "153" and "154".] However, Plaintiff then argues that he discovered BMW FS tradeline sometime in August or September 2013, but he specifically testified that he also found Hyundai, Time Warner and Wells Fargo at the same time. [CRT 278:13-17, Vol. II] Therefore, the jury did not have a basis to determine that any create denial was solely attributed to Defendant.

Plaintiff's 7th through 10th inferences are as follows: 7) If Plaintiff was denied credit prior to August or September 2013, he would have begun his investigation sooner; 8) the three credit denials took place after September 18, 2013, the date of Defendant's first ACDV response; 9) all other negative accounts were promptly removed therefore Plaintiff only shopped for additional credit after he exhausted his efforts to have Defendant remove its reporting; and 10) one or more of his credit denials took place after he engaged the credit bureaus and furnishers to cleans his credit. The inference that Plaintiff would have begun his investigation sooner is pure speculation, and inferences 8 through 10 are related and each unreasonable. Plaintiff only testified that he was denied credit sometime in 2013. **When** Plaintiff's credit was denied is critical because he also testified that in August or September 2013 he found multiple creditors on his credit report. [CRT, Vol. 2, 278:13-17] Plaintiff's inference that all creditors promptly removed their reporting is false, as Plaintiff testified that he had not received any response from Hyundai relating to the claimed vehicles that were not his as of November 7, 2013. [Transcript V. II, p. 326: 2-9.] If other negative tradelines were included on

Plaintiff's credit report then a denial could not be solely or substantially attributable to Defendant. But we do not know the answer and therefore neither could the jury. Finally, there is no evidence or citation to evidence supporting that Plaintiff applied for credit in "late 2013." Again, without any information as to "when" or "why" he was denied credit, and with so many other disputed creditors on his credit report, it just cannot be equitable or correct to hoist all responsibility on Defendant.

Plaintiff's last inference is that Defendant bore the burden of proving that the credit denials occurred before it completed its first ACDV response. It was Plaintiff's burden to establish that he suffered actual damages by a preponderance of the evidence. Therefore, evidence regarding the actual credit denials that occurred was his burden to bear. Speculative inferences cannot replace Plaintiff's burden of proof. Plaintiff failed to prove that he suffered actual damages under the FCRA to his reputation or creditworthiness by a preponderance of the evidence. Therefore, a new trial should be granted on this basis alone.

## V. THE EVIDENCE WEIGHS IN FAVOR OF PLAINTIFF HAVING AUTHORIZED THE PURCHASE OF THE VEHICLE.

Plaintiff's Opposition argues that the evidence weighed in favor of him not authorizing Mike Kim to use his personal identifying information because the dealer's testimony made Mike Kim's testimony was not credible, and that Plaintiff's story never changed. The glaring misrepresentations in Plaintiff's trial testimony are set forth in Section VI. The dealer's representative, Mr. Nguyen, testified that it was his personal practice to require that the person in his office seeking to purchase a vehicle produce their original drivers' license and not a copy. [CRT, Vol. 1, 144:13-25.] Yet the dealership released to Mike Kim the BMW on the strength of a "copy"

of Plaintiff's driver's license. Mr. Nguyen also testified that BMW FS would not agree to purchase a contract with a POA and therefore not pay any commission unless BMW FS financed the purchase of the vehicle. [CRT, Vol. 1, pp. 149:20-24; 151:20-25; 152:1-10.] Finally, Mr. Nyguen's credibility was further diminished when he identified the Plaintiff in the courtroom as the individual who signed all the purchase documents - a fact neither side claims. [CRT, Vol. 1 , p. 145:5-17.]

What remains consistent, credible, and undisputed is that Plaintiff signed the POA with the text authorizing Mike Kim to use his personal information. [CRT Vol. 2, pp. 242:15-25; 243:1-21; Vol. 3, pp. 413:18-25, 414:1-14.] Plaintiff's theory being that Mike Kim must have saved the documents from 3 years earlier does not add up. There is no evidence that the POA was one of these documents, only Plaintiff's speculation, which is not a reasonable inference that the jury could draw. Furthermore, Mike Kim testified that his business was doing well and only came to a close in 2009 after Colorado tort laws changed with respect to insurance billing in Colorado, which thereafter impacted his business. [CRT, Vol. 2, pp. 432:24-25; 433:1-13.] What also does not add up is Plaintiff's testimony that Mike Kim asked him twice before 2011 to use his personal credit. [CRT, Vol. 2, pp. 335:25; 336:1-16.] This fact was contradicted by Plaintiff's own deposition testimony [CRT, Vol. 2, pp. 337:18-25; 338:1-16.]. If the alleged sinister Mike Kim, who was never prosecuted for identity theft nor even named as a Defendant in this lawsuit, intended to use Plaintiff's credit all along and save the POA for three years, why would he not just use the POA on the two alleged occasions that Plaintiff testified he asked him? The answer to this confusing question is that it is simply not true, and that this is what happens when fictional stories are told.

## VI. PLAINTIFF'S ATTEMPTS TO CURE HIS IMPEACHMENT FAIL

Plaintiff's Opposition brushes aside numerous credibility issues and his inconsistent testimony. Discussed herein are only four of the many examples showing how Plaintiff's arguments misrepresent his trial testimony.

### A. Plaintiff's Personal Relationship with Mike Kim.

Plaintiff misrepresented his personal relationship with Mike Kim. During Plaintiff's cross-examination he was asked repeatedly about his relationship with Mike Kim and insisted that aside from work and occasionally sharing a meal, he did not socialize with Mike Kim. [CRT, Vol. 2, pp. 315:20-25; 316:1-13.] Plaintiff was later impeached as he admitted to not only socializing with Mike Kim but going on vacation and playing tennis with him. Mike Kim also testified that he invited Plaintiff on a ski trip over Thanksgiving break because Plaintiff did not have any family in the U.S. [CRT, Vol. 3, 431:5-25; 432:1-8.] This was not a strictly an employer-employee relationship as represented by Plaintiff.

### B. Plaintiff's Communications with Ms. Jarosik.

Plaintiff's attempt to discredit the impeachment evidence regarding his communications with Defendant's employee, Angela Jarosik, also fail. During his deposition, Plaintiff testified that Ms. Jaroski told him to send her additional documents from Hyundai and she would reinvestigate. [CRT, Vol. 2, 325:3-15]. Ms. Jarosik corroborated Plaintiff's version of the conversation when she testified that "I advised him that if he had any further documentation to show for us to review, I invited him to send that in. But I did not receive anything further." [CRT, Vol. 3: 492:3-7]. During direct examinination, Ms. Jarosik's offer to review any additional information disappears. Instead it is replaced by Plaintiff's new testimony that he

asked her to delay the identity theft decision because a similar investigation was being done by Hyundai. [CRT, Vol. 2, 309:17-20.] Plaintiff again changes his testimony to fit his story at trial.

**C. The April 11, 2011 Experian Credit Reports.**

On cross-examination Plaintiff admitted that during deposition he testified that he never entered his personal information online when questioned about ordering not one, but two April 11, 2011 Experian credit reports. [CRT, Vol. 2, 352: 8-11.] Yet his testimony offered at trial completely reversed his prior story as he then testified that he did in fact enter his personal identifying information on a website that was linked to Experian. [CRT, Vol. 2, 352: 2-4.] Despite admitting to entering his personal identifying information on the website, Plaintiff testified at trial that he did not request the credit reports and that he received it in the mail unsolicited. [CRT, Vol. 2, 346: 2-12; .] This testimony was directly refuted by Experian witness Mary Ellen Marquez who testified that it is impossible to receive a copy of a credit report in the mail if not requested. [CRT Vol. 3, 402: 19-24.] Plaintiff's Opposition attempts to cast doubt on Experian, suggesting it may have been mistaken. Plaintiff needs too many coincidences and mistakes by others to make his story plausible.

**D. Conflicting Testimony Regarding Mike Kim.**

Plaintiff admitted that during deposition he testified that Mike Kim never asked him to help him purchase an automobile. [CRT Page No. 337, Line 9 through Page 338, Line 23, Vol. II]. However, as was a theme throughout trial, Plaintiff completely reversed his story. At trial, Plaintiff testified that not only did Mike Kim ask him to use his personal information to buy a car in 2009, but he also asked him

again in 2011. [Page Nos. 268, Line 4 through 270, Line 1 and Pages 335, Line 25 through page 336, Line 16 Vol. II] Plaintiff's excuse for this change, is that he did not understand "help" to mean "assist" Mike Kim in obtaining a vehicle by using his personal information. These were not two distinct questions. As with the examples noted above, Plaintiff simply changed his testimony to fit the story he wanted to present at trial. As noted above, these are only four examples of Plaintiff's credibility being severally damaged. At every turn, Plaintiff changed his previous testimony to fit the story he wanted told at trial. His testimony should not be believed.

## VII. PLAINTIFF DID NOT PRESENT EVIDENCE THAT DEFENDANT CONTINUED TO PURSUE ITS CLAIM.

In order for a civil penalty to be assessed against Defendant under Plaintiff's CA ID Theft law claim, Plaintiff had to establish three pre-requisite elements by "clear and convincing" evidence. The third element required Plaintiff to prove: that Defendant "continued to pursue its claim against the victim [Plaintiff] after the claimant was presented with facts that were later held to entitle the victim to a judgment . . ." Cal. Civ. Code §1798.93(c)(6)(c)[ CRT 571:20-572:11, Vol III] Plaintiff's Opposition argues that he established all three conditions by clear and convincing evidence. He cites evidence regarding what he identifies as Defendant's "superficial investigation". However, ***Plaintiff does not cite any evidence establishing that Defendant continued to pursue its claim against Plaintiff after the conclusion of its ID Theft investigation***. This is likely because there is no such evidence in the record. Plaintiff did not satisfy any burden of proof, much less the much higher "clear and convincing" standard. The civil penalty should be stricken.

## VIII. THE DISPUTED JURY INSTRUCTIONS SHOULD HAVE BEEN GIVEN.

Liability under the Fair Credit Reporting Act is specifically determined by whether the consumer disputes a credit remark through a CRA or directly to the furnisher. 15 U.S.C. § 1681s-(c)(1); 15 U.S.C. § 1681s-2(d). Therefore, Defendant's proposed jury instruction regarding direct disputes should have been provided. Especially considering that Plaintiff's indirect disputes in this matter only provided a broad brush discription of his dispute without supporting documentation.

Additionally, Defendant maintains that a "reasonableness" definition should have been also been provided. Such a definition was discussed when the Ninth Circuit noted that the "pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman v. Wolpoff*, 584 F.3d 1147, 1157 (9th Cir. 2009). A reasonableness instruction, coupled with the Ninth Circuit's notation that a credit furnisher's instruction could be wrong but still reasonable, would have assisted the jury in understanding Defendant's responsibilities when investigating Plaintiff's indirect disputes.

## IX. CONCLUSION

For the foregoing reasons, the court should grant BMW FS a new trial.

Dated: October 29, 2015 CALEY & ASSOCIATES

A Professional Corporation

By: *__/s/ Rebecca A. Caley__*
Rebecca A. Caley
Christopher M. Domin
Attorneys for Defendant,
BMW Financial Services NA, LLC